## In re UNIVERSAL RUBBER PRODUCTS CO.

(District Court, W. D. Pennsylvania. March 5, 1926.)

No. 9857.

1. **Corporations ⬅101—Issuance of stock to promoter for property held fraudulent, within statute making judgment of directors conclusive as to its value in absence of fraud (General Corporation Law Del. § 14).**

That corporation, issuing stock to promoter in exchange for property, agreed to reimburse him for all payments made thereon and to assume all sums due thereon, so that the property was paid for by the corporation, *held* to show fraud, within General Corporation Law Del. § 14 (Rev. Code 1915, § 1928), making the judgment of the directors conclusive as to the value of the property in absence of actual fraud, especially where, to promoter's knowledge, the par value of the stock was carried on the books as good will.

2. **Bankruptcy ⬅228.**

Assessment by referee against stockholders of bankrupt corporation for estimated amount required for payment of allowed claims and expenses affirmed.

3. **Bankruptcy ⬅225—Assessment against stockholders in dollars and cents, instead of percentage, held not erroneous.**

That referee in bankruptcy fixed amount of assessment against stockholders of bankrupt in dollars and cents, instead of fixing a percentage, was *not* error, where order was made without prejudice to right of individual stockholders to contest their individual liability.

In Bankruptcy. In the matter of the Universal Rubber Products Company, bankrupt. On review of order of referee levying an assessment against stockholders. Modified and affirmed.

Sturgis & Sturgis and E. C. Higbee, all of Uniontown, Pa., for exceptants.

H. M. Stephens, of New York City, J. W. Hutchison, of Butler, Pa., and Jos. F. Weis, of Pittsburgh, Pa., for trustee.

B. R. Williams, of Butler, Pa., for Topham.

SCHOONMAKER, District Judge. We have for review an administrative order of a referee in bankruptcy, levying an assessment against stockholders to pay debts.

The referee found that the entire common stock of the bankrupt corporation, $1,000,000 par value, and $100,000 par value of preferred stock, had been issued to J. B. Topham, the promoter of the company, who, on its organization, became its president, without anything substantial being paid for it. The corporation was chartered by the state of Delaware on May 26, 1919. The incorporators met that day, adopted by-laws, and elected J. B. Topham, Richard A. Ennis, and Richard T. A. Ennis directors of the company. The directors met at Newcastle, Pa., September 1, 1919, for their first meeting, and elected J. B. Topham president; Richard A. Ennis vice president, and Richard T. A. Ennis secretary and treasurer. Then the directors, by resolution adopted at that meeting, voted to buy from J. B. Topham land in Zelienople, Butler county, Pa., conveyed to him on May 12, 1919, and all the property and accounts receivable of the Universal Rubber Products Company owned by said Topham, and to give him in exchange therefor 10,000 shares of common stock and 1,000 shares of preferred stock of the corporation, upon the following conditions, written in said resolution:

" * * * However, this corporation is to assume the purchase-money mortgage now on said property and further to relieve the said J. B. Topham from the payment or payments due or to become due for machinery, supplies, equipment, or other property ordered or contracted for the completion of the factory, and the corporation is to reimburse J. B. Topham in cash for any disbursements he may be called upon to make on account of such purchases, as well as for such disbursements made for such payments already made, in addition to the 10,000 shares of common capital stock and 1,000 shares of preferred capital stock provided for above; however, the services of the said J. B. Topham up to this date in locating the factory, planning its construction and organization, etc., are included with the property above mentioned in the full payment for the stock above provided for."

The board of directors then found and declared the value of said property to be $1,100,000.

The referee found, as a matter of fact, that the only thing of value paid for said stock was the accounts receivable of the Universal Rubber Products Company, of a face value of $27,051.73, on account of which the corporation was able to collect only $988.44. The referee further found that the utmost value of the services of J. B. Topham to the corporation from the date of organization, May 26, 1919, to September 1, 1919, the date of the resolution, was $6,250, and therefore found that the total value given by said Topham for said stock was $33,301.73.

[1] The objecting stockholders contest this finding, and contend that the court is concluded by the findings of the board of directors as to the value of the property given in exchange for the stock, in view of the provisions of section 14 of the General Corporation Law of Delaware (Rev. Code 1915, § 1928), which is in the following language:

"Sec. 14. Issuance of Stock for Labor or Real or Personal Property. Subscriptions to, or purchase of, the capital stock of any corporation organized or to be organized under any law of this state may be paid for, wholly or partly, by cash, by labor done, by personal property or by real property or leases thereof; and the stock so issued shall be declared and taken to be full paid stock and not liable to any further call, nor shall the holder thereof be liable for any further payments under the provisions of this chapter. And in the absence of actual fraud in the transaction, the judgment of the directors, as to the value of such labor, property, real estate or leases, shall be conclusive."

Under this statute, actual fraud must be found. Was there evidence in this case which justified the referee finding actual fraud in the valuation of this property? We think there was. In the first place, the resolution itself discloses by its very terms that Topham was to be reimbursed by the corporation for all payments already made by him on the property conveyed; in addition thereto, the corporation was to assume and pay all sums due on purchase-money mortgage, machinery, supplies, equipment, or other property for the completion of the company's plant, so that Topham got stock for property which the corporation was later to pay for in full out of other funds.

Certainly Topham gave no value for the property thus conveyed. This, in itself, we think sufficient evidence to justify the finding of the referee as to fraud. In addition, the evidence discloses that Ernst & Ernst, certified accountants, in opening up a set of books for the corporation, with the knowledge and consent of Topham, carried the par value of this corporation promotion stock on its records as good will, $1,100,000.

Exceptants cite In re Pipe Line Oil Co. (C. C. A.) 289 F. 698, and Clinton Mining & Mineral Co. v. Jamison, 256 F. 577, 167 C. C. A. 607, as ruling the instant case. We subscribe very fully to the ruling of these cases, but cannot see that they support the contention of exceptants, for the reason that here we have evidence of fraud on facts as they existed when this stock transaction was consummated. We therefore conclude that there was no error in the findings of fact and conclusions of law of the referee as to the bona fides of this stock issue in exchange for property.

[2] This leads us next to the discussion of the amount and rate of assessment. The referee found that the allowed and approved claims against the bankrupt estate, with accrued interest, would amount to more than $500,000, and in addition thereto estimated that the cost, expense, disbursements, and attorney's fees of the administration of the estate, together with the cost of collecting unpaid stock subscriptions, would amount to $100,000. The referee then ordered the collection of a preliminary assessment against stock of sufficient amount to realize $600,-000. The inclusion of this $100,000 for costs and attorney's fees is objected to as being unwarranted by the facts of the case, there being no evidence to warrant such an estimate. The amount to be included in the preliminary assessment for attorney's fees and costs and expenses must necessarily be an estimate. It may be that the amount is high, but the referee bases his estimate on the amount of costs and attorney's fees that have already accrued in the case, and we cannot at this time say that his estimate is wrong. Certainly, if there is an overplus collected beyond that necessary to pay debts and the costs of administering the estate, the shareholder paying will be entitled on final distribution to that overplus. We therefore cannot convict the referee of error in this regard.

[3] Exceptants also urge that the referee erred in computing the actual amount of the assessment of shareholders involved in dollars and cents, instead of merely fixing the percentage. We can see no error in making this computation. By so doing no legal right is taken away from the individual stockholders, who still have the right to contest their individual liability to such assessment, except that they are concluded by the finding in this case as to the administrative necessity of this assessment. The referee has made it plain by his order that it is without prejudice to the individual rights of shareholders to contest their respective individual liability.

It is also contended that the referee erred in directing the trustee to bring action in equity in this court to collect these assessments. Counsel for the trustee contends that, inasmuch as this is a Delaware corporation, and an action in equity is authorized in Delaware to collect stock subscriptions and to adjust liabilities between stockholders, such an action is proper here. We have grave doubts that such an action would lie in this case, and therefore conclude that the trustee should not be limited as to his forum for the recovery of these assessments. We therefore conclude that the order of the referee should be modified to that extent only.

An order may be entered accordingly.