Ernest E. CRUME, Jr., Appellant,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Appellee.

No. 23742.

United States Court of Appeals
Fifth Circuit.

Aug. 11, 1967.

Rehearing En Banc Denied
Sept. 13, 1967.

Ernest E. Crume, Jr., pro se.

Sam R. Wilson, Asst. Atty. Gen., Houston, Tex., Lonny F. Zwiener, Asst. Atty. Gen., Austin, Tex., for appellee.

Before RIVES and WISDOM, Circuit Judges, and CONNALLY, District Judge.

WISDOM, Circuit Judge.

This case presents a close question: Was Ernest Crume, the petitioner, accorded due process of law in the procedures leading to his pre-trial identification[1] as one who had committed a robbery? We have resolved our nagging doubts in favor of affirming the district court's denial of his petition for habeas corpus.

December 10, 1956, an armed bandit wearing a hat and a blue corduroy jacket robbed a liquor store in Houston, Texas. Four days later the Houston police arrested Ernest Crume for drunkenness. Soon after his arrest, the police began to suspect Crume of the liquor store robbery. In pursuit of their suspicion, they questioned Crume at length and, in the next day or so, had him appear in several lineups.[2] As the result of one of these lineups, and later individual confrontation, the victim of the robbery identified Crume as the bandit.

Five men participated in the lineup here called in to question. The record[3] discloses nothing of similarity or dissimilarity of the men's appearances, except that one man was Mexican or Latin-American. The victim of the robbery, Mrs. Lenormand, thought she recognized Crume as the robber, but indicated to the detective in charge that she could not be sure unless she could see him wearing a hat.[4] The police required Crume to put on a hat. Mrs. Lenormand then requested the detective to have Crume say, "This is a stick-up." The police complied with her request.[5]

By this point Mrs. Lenormand's tentative identification of Crume had firmed up considerably. "I was quite sure," she testified, "but I didn't want to say something that wasn't right, so that's when we went to Mr. Hopper's [the detective's] office." Once the police had taken Mrs. Lenormand to a separate office, they picked up a blue corduroy jacket matching her description of the bandit's clothing, took it to the next room, and had Crume put it on. The police then required Crume, wearing the jacket and a hat, to walk alone past Mrs. Lenormand and to repeat the words, "This is a stick-up."[6] At this point Mrs. Lenormand positively identified Crume.

1. For discussions of some of the threats to criminal defendants' rights which arise in the context of police lineups see Comment, The Right to Counsel During Police Identification Procedures, 45 Texas L.Rev. 504 (1967); Comment, Constitutional Ramifications of the Police Lineup, 12 Vill.L.Rev. 135 (1966); Comment, 113 U.Pa.L.Rev. 774 (1965); Comment, 4 Houston L.Rev. 713 (1967); Comment, 24 Wash. & Lee L.Rev. 107 (1967).

2. Crume does not raise the equal protection question whether the use in a lineup of a person in jail awaiting trial is an unconstitutional discrimination in favor of the defendant who is financially able to obtain release on bail. See Butler v. Crumlish, E.D.Pa.1964, 229 F.Supp. 565; Butler v. Crumlish, E.D.Pa.1964, 237 F.Supp. 58; United States v. Evans, E.D.Pa.1965, 239 F.Supp. 554, 556–558; Rigney v. Hendrick, 3 Cir. 1965, 355 F.2d 710; Comment, 113 U.Pa.L.Rev. 774 (1965).

3. We are fortunate to have before us in this case both the record of the original trial in the state court and that of the habeas hearing in the court below.

4. The record reveals that Mrs. Lenormand had been unable to identify the bandit from photographs the police showed her. None of the pictures showed men with hats on, she explained.

5. There is no indication whether the other lineup participants were required to put on hats or to say, "This is a stick-up." Mrs. Lenormand testified that she did not know. We assume for the purposes of this case that Crume was the only person so required to act.

6. Only Crume's testimony in the habeas hearing below indicated that he was forced to repeat the language of the robbery at this time. There was no evidence to contradict Crume's testimony, however.

## I.

■ The most recent decisions of the Supreme Court declare that a suspect has the right to counsel at an identification lineup. United States v. Wade, June 12, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149; Gilbert v. State of California, June 12, 1967, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. The Court held that a lineup is a critical stage of the prosecution, at which counsel must be present. First, the presence of counsel is the only way to insure that irregularities tending to produce incorrect identification may be noticed and presented adequately at trial.[7] Second, counsel may be able to prevent at least some irregularities from occurring.

Even though Crume did not have counsel at the lineup, he may not take advantage of *Wade* and *Gilbert*. The rules announced in those cases apply only to lineups taking place after Monday, June 12, 1967. Stovall v. Denno, June 12, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

## II.

■ The Supreme Court recognized in *Stovall* that entirely aside from the right to counsel or the privilege against self-incrimination [8] lineups must meet the due process standards of fundamental fairness in order to pass constitutional muster. It is by this rule that we must decide this case.

A. In each of these lineup cases the Supreme Court's concern was that irregularities might lead to incorrect identification and consequent conviction of the wrong person.[9] Of the irregularities the Court noted, almost all were procedures by which the police might purposely or innocently influence the witness to identify the man the police thought to be guilty. Irregularities of this kind may rise to the dignity of due process violations. See Stovall v. Denno, supra, 87 S.Ct. 1973.

---

7. The Court seemed to feel that any unfairness so revealed would go primarily to the credibility of the identification rather than to its admissibility. "In short," the Court said, "the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningful to attack the credibility of the witness' courtroom identification." 87 S.Ct. 1934. The Court did not, of course, rule out the possibility that the unfairness could be so great that admission of the identification would constitute a violation of due process.

8. The Court said in Wade:
Neither the lineup itself nor anything shown by this record that Wade was required to do in the lineup violated his privilege against self-incrimination. * * * We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have. It is no different from compelling Schmerber to provide a blood sample or Holt to wear the blouse, and, as in those instances, is not within the cover of the privilege. Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a 'testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt. 87 S.Ct. 1929–1932.
In Schmerber v. State of California, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908, the Court stated that the privilege "offers no protection against compulsion to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." See also Weintraub, Voice Identification Writing Exemplars and the Privilege Against Self-Incrimination, 10 Vand.L. Rev. 485 (1957); 45 Tex.L.Rev. 504, 513–19 (1967).

9. The concern in this area is for the reliability of the guilt determining process rather than for the protection of the dignity or privacy of the individual. See Mishkin, The Supreme Court 1965 Term —Foreword: The High Court, The Great Writ, and the Due Process of Time and Law, 79 Harv.L.Rev. 56, 77– 92 (1965).

Palmer v. Peyton, 4 Cir. 1966, 359 F.2d 199 (en banc), is an example of an outrageously improper identification. There the police told the rape victim that they and *a* suspect and wanted her to see if she could identify his voice. The implication was already clear that the voice she was about to hear belonged to a man the police thought was guilty. The police did not permit the witness to hear any other voices for comparison, but presented Palmer's voice alone. They forced Palmer to repeat "the damning words" used in the crime. And they showed the witness one of Palmer's shirts which approximately matched the victim's description of the shirt worn by her attacker. This cumulation of unfair suggestions overwhelmed the court:

> In their understandable zeal to secure an identification, the police simply destroyed the possibility of an objective, impartial judgment by the prosecutrix as to whether Palmer's voice was in fact that of the man who had attacked her. * * * A state may not rely in a criminal prosecution * * * on an identification secured by a process in which the search for truth is made secondary to the quest for a conviction. 359 F.2d at 202.

The most serious irregularity in *Palmer* was to present a lone suspect. "When the identifier is presented with no alternative choices," the court observed, "there is * * * a strong predisposition to overcome doubts and to fasten guilt upon the lone suspect." 359 F.2d at 201. The Supreme Court agrees with the Fourth Circuit. In *Stovall* it noted that "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." 87 S.Ct. 1972.[10]

While individual showings undoubtedly present the most serious danger of police suggestion, that vice may creep into multiple-suspect lineups whenever the police single out one suspect for attention. The Supreme Court in *Wade* catalogued a number of techniques for singling out one of a number of lineup participants:

> "In a Canadian case * * * the defendant had been picked out of a lineup of six men, of which he was the only Oriental. In other cases, a black-haired suspect was placed upon a group of light-haired persons, tall suspects have been made to stand with short non-suspects, and, in a case where the perpetrator of the crime was known to be a youth, a suspect under twenty was placed in a lineup with five other persons, all of whom were forty or over." * * * [Other examples are] that all in the lineup but the suspect were known to the identifying witness, that the other participants in a lineup were grossly dissimilar in appearance from the suspect, that only the suspect was required to wear distinctive clothing which the culprit allegedly wore * * * that the suspect is pointed out before or during a lineup, and that the participants in the lineup are asked to try on an article of clothing which fits only the suspect. 87 S.Ct. 1935.

The fault common to all these practices is that the police single out one person and influence the witness by directing attention to some element known to be connected with the crime—the unique appearance of the suspect, the words spoken in the course of the crime, or clothing similar to the suspect's clothing. The necessary result of this singling out is to suggest to the witness that the suspect so isolated is in fact the one the police think is guilty. It is easy to see how such practices prejudice the reliability of the identification.

■ B. In this case the police singled Crume out at least three times—twice in the lineup when they had him put on a hat and when they had him say, "This is a stick-up," and once again in the Rob-

---

10. The Court has granted certiorari in a case apparently involving a single suspect confrontation. Biggers v. Tennessee, U.S. June 12, 1967, 388 U.S. 909, 87 S.Ct. 2132, 18 L.Ed.2d 1347, granting cert. to review Biggers v. State, Tenn.1967, 411 S.W.2d 696.

bery Detail Office when they forced him to put on the blue jacket.

We have no doubt that there would have been a denial of due process had the police initiated these procedures without any prior indication from Mrs. Lenormand that Crume was the bandit. There would have been an impermissible suggestion that Mrs. Lenormand identify Crume rather than one of the other men in the lineup. In this case, however, the danger of suggesting a suspect to the witness was diminished because the witness had already settled firmly on Crume. Further, at least with regard to the procedures followed during the lineup, the police did not select incriminating items to single out Crume. Instead, to reduce the area of uncertainty in her mind, the witness suggested ways to insure the identification of Crume as indeed the armed bandit.

We are aware of opposing considerations. Once a faint glimmer of recognition strikes a witness, his tendency may be to do everything in his power to reinforce that recognition and come to a positive identification. To compensate, a fair practice might be to require the police to take every reasonable precaution to insure that the witness is not overly influenced by his original impression, and that he arrives at an objective and accurate identification. Thus even when the witness requests that the person he has tentatively identified be required to do or say something, all participants in the lineup should be required to act or speak. There is much to say for this practice. We think it is unquestionably fairer than singling out the tentative suspect.[11] When the witness' original identification is tentative or is for some other reason suspect, such a procedure could easily rise

to the dignity of a due process requirement.

Nonetheless when the witness' original identification is as strong as it was here, we think the danger of suggestion so small as not to violate due process. Due process does not require the states to adopt the fairest possible procedures, but only to avoid "offend[ing] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Snyder v. Commonwealth of Massachusetts, 1934, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 87 L.Ed. 674; accord, Spencer v. State of Texas, 1967, 385, U.S. 554, 87 S.Ct. 648 17 L.Ed.2d 606. We cannot say that in the circumstances of this case the failure of the police to require the four other participants in the lineup to wear hats and to repeat, "This is a stick-up" created such a risk of erroneous identification as to have violated a fundamental right and thus to require exclusion of the identification testimony. To be sure that failure bears on the credibility of the identification. But the defendant thoroughly explored that issue at his original trial.

C. At the lineup, at least, the witness viewed Crume along with four other men, even if the four were not required to wear hats or say "This is a stick-up".[12] In the Robbery Office viewing, however, there was no such opportunity for even limited comparison. There the police presented Crume alone, dressed in the incriminating blue jacket. This was just the practice the Fourth Circuit struck down in Palmer v. Peyton, supra, and that the Supreme Court admitted in *Stovall* has been highly criticized. The Robbery Office viewing raises the most difficult question we find in this case.

Despite the disfavored status of the single suspect presentation, the Supreme

11. The police conducting the lineup in Gilbert v. State of California, see 87 S.Ct. at 1972 n. 2, and Gilbert v. United States, 9 Cir. 1966, 366 F.2d 923, 934–935, apparently used a modification of this technique. Each participant in the lineup would be asked to repeat certain words or put on an article of clothing. Only later would the group be reduced in size to those people witnesses said they wanted to see again.

12. "Placing the suspect in a line-up will naturally reduce the chances of an erroneous identification * * *" as compared to a single-suspect presentation. Comment, 24 W. & L.L.Rev. 107, 112 (1967).

Court has upheld a highly untrustworthy isolated-viewing identification on the basis of "the totality of the circumstances surrounding" the confrontation. Stovall v. Denno, supra, 87 S.Ct. at 1972. There the witness had been stabbed eleven times and was in the hospital, her life hanging in the balance. Five policemen and two men from the District Attorney's office brought Stovall to the witness' hospital room. He was the only Negro in the room. The witness identified him. Even though there was nothing to suggest why, in light of the circus which was already taking place in the room, one or two more Negroes could not have been included for comparison purposes, the Supreme Court held the identification did not violate due process. The reason was the imperative urgency of obtaining an identification before the sole witness died.[13]

Although there was no pressing necessity for a single-suspect viewing in this case, the circumstances indicate that this irregularity did not have the proscribed suggestive effect on the witness. Before the isolated viewing took place, Mrs. Lenormand said that she was "quite sure" Crume was the robber. It was only out of an abundance of caution that she wished to see him again. In these circumstances, we are unable to find a violation of due process.

### III.

We have examined Crume's other allegations. We agree with the district judge that Crume failed to exhaust his state remedies with regard to three of his allegations. 28 U.S.C. § 2254. We agree also that the remaining three grounds are without merit.

\* \* \* \* \* \*

As our discussion indicates, we regard this as an exceptionally close case. The strength of Mrs. Lenormand's original identification is the primary reason for our affirming the judgment of the district court.

RIVES, Circuit Judge (Specially Concurring in the Result Only):

Crume's objection to what occurred at the lineup in his state habeas petition (R. 224, et seq.) was that he "was forced to make an incriminating statement against himself and was forced to incriminate himself by being forced to put on a hat and coat and speak certain words so as to enable a witness to 'identify him better'." Similarly in his federal habeas petition (R. 156, et seq.), Crume complained that what he was required to do in the lineup violated his privilege against self-incrimination. Judge Ingraham, the Federal District Judge, made only one conclusion of law as to the occurrences at the lineup, viz: "5. Petitioner was not required to incriminate himself in the 'show up' at Houston police headquarters." The correctness of that conclusion is amply sustained by part I of the Supreme Court's opinion in United States v. Wade, June 12, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. Upon that holding, I concur in the judgment of affirmance.

The question of whether the confrontation at the lineup "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law", or "that the confrontation resulted in such unfairness that it infringed his right to due process of law", was left open to persons convicted prior to June 12, 1967, by Stovall v. Denno, June 12, 1967, 87 S.Ct. 1971. That question is not a ground as to which Crume has exhausted his state remedies. 28 U.S.C. § 2254. Further it is not a ground properly before this Court, because it was not considered or decided by the federal district court.

I therefore concur specially in the result only.

---

13. Fortunately, the witness did not die, but lived to testify to her hospital room identification.

## ON PETITION FOR REHEARING EN BANC

**PER CURIAM:**

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, Rule 25a, subpar. (b), the Petition for Rehearing En Banc is denied.

RIVES, Circuit Judge (dissenting):

As indicated in my special concurrence to the original decision, I had thought the law was clear that what Crume was required to do in the line up did not violate his privilege against self-incrimination, and that that, insofar as here pertinent, was all that the district court had decided. The majority, however, considers that the question to be decided on appeal is: "Was Ernest Crume, the petitioner, accorded due process of law in the procedures leading to his pre-trial identification as one who had committed a robbery?" The majority continues: "We have resolved our nagging doubts in favor of affirming the district court's denial of his petition for habeas corpus." If that were the question, I would feel called upon to discuss some of the majority's factual conclusions with which I do not agree and would probably vote for reversal. However, I am firm in the view that that question should first be considered in a trial court, state or federal, and that to make the original decision here is to depart from our function as a court of *appeals*.

The majority does, however, consider and decide that broad issue, and thus, to some extent, prejudices any future presentation of that issue to a trial court. To me that issue seems so close and of such complexity and difficulty that due process required that Crume's persistent requests for counsel be granted both in the district court and on appeal.[1]

I therefore respectfully dissent.

1. Dillon v. United States, 9 Cir. 1962, 307 F.2d 445, 446, 447; United States v. Wilkins, 2 Cir. 1964, 338 F.2d 404, 406;

La Clair v. United States, 7 Cir. 1967, 374 F.2d 486, 488, 489.