Moses **PEARSON, Jr.,** Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 24679.

United States Court of Appeals
Fifth Circuit.

Jan. 12, 1968.

Donald G. Nichols, Jacksonville, Fla., for appellant.

Allan P. Clark, Asst. U. S. Atty., Jacksonville, Fla., for appellee.

Before BELL, GOLDBERG and DYER, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

Appellant was charged in a three-count indictment with having violated Title 18 U.S.C.A. § 1708, possessing a government check which had been stolen from the mails; and Title 18 U.S.C.A. § 495, forging the signature of the payee on the check, and uttering the same. This appeal is from the judgment of conviction entered on a jury verdict of guilty on all counts. We reverse on one of the errors assigned.

The facts are that a Mr. Thomas Watson of Jacksonville, Florida had been receiving social security checks through the mails since 1964. He usually received his check on the third day of each month. His May 1966 check failed to arrive. Appellant was identified by Mr. Watson as being the person who inquired at his home on May 3, 1966 as to the whereabouts of a person unknown to Watson. On this occasion appellant had access to Watson's mailbox.

The check in question was cashed by the Pic N' Save Drug Company in Jacksonville on May 3. James Delk, an employee of Pic N' Save, identified appellant as being in the store on that same date and in possession of a social security check. Mrs. Mary Kirkland, a cashier in Pic N' Save, identified appellant as the person for whom the check was cashed. She testified that appellant placed the endorsement of Thomas Watson on the check.

There are three assignments of error. First, it is contended that the trial court committed reversible error in allowing testimony of a fingerprint expert placing appellant's fingerprint on the stolen check. This testimony was based on a comparison of an exemplar of appellant's fingerprints. The exemplar was made after his arrest. Second, the admissibility of the testimony of witnesses Delk and Kirkland is contested on the ground that their identity of appellant was based in part on selecting him from a police lineup at a time when he was not represented by counsel. The third assignment is the refusal of the court to allow cross-examination of these witnesses with respect to the details of the lineup.

With respect to the first assignment, there was no error in allowing the fingerprint expert to testify on the basis of the fingerprint exemplar. We perceive that appellant's argument in this respect, although not articulated as such, rests on the proposition that the taking of the exemplar was a critical stage of the prosecution and that the requirements set forth in Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, were not adequately satisfied. The difficulty with appellant's position, however, is that the Supreme Court decisions are the other way, whether viewed in the light of the Fifth Amendment privilege against self-incrimination or the Sixth Amendment right to counsel. The taking of fingerprints does not fall within the categories of either communication or testimony so as to be protected by the Fifth Amendment privilege. See Schmerber v. State of California, 1966, 384 U.S. 757, 86 S. Ct. 1826, 16 L.Ed.2d 908; and Gilbert v. State of California, 1967, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. In addition, both *Gilbert* and United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, make it clear that the taking of the fingerprint exemplar is not such a critical stage of the criminal proceedings as would entitle appellant to the assistance of counsel.

The second assignment of error stems from the identification of appellant by witnesses Delk and Kirkland. Their in-court identification was based on their observation of appellant when he was in possession of the check at the Pic N' Save. It developed on cross-examination that these witnesses had picked appellant out of a police lineup prior to trial. Mrs. Delk had also identified him in the postal inspector's office in the Federal Building in Jacksonville. No objection was lodged to the testimony of these witnesses in spite of the fact that our decision of Wade v. United States, 5 Cir., 1966, 358 F.2d 557, rendered it inadmissible at the time. Meanwhile the Supreme Court reversed the *Wade* case so the Supreme Court decision in that case, supra, and in Gilbert v. State of California, supra, are now the applicable law.[1] They hold that a sus-

---

1. Appellant is not now entitled to the benefit of our *Wade* decision which was effective as a temporary gloss on the Sixth Amendment during his trial but which has now been reversed. The situation is not remotely akin to that presented in James v. United States, 1961, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246, where the

pect may not be subjected to a pretrial identification process in the absence of his counsel without violating the Sixth Amendment. If he has been so subjected, that identification cannot be used to bolster an in-court identification nor can there be an in-court identification at all unless it is established that the in-court identification is not the fruit of the earlier identification.

■ The government correctly answers that these cases do not apply since the Supreme Court gave this new constitutional principle prospective application only. See Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. This court in the case of Crume v. Beto, 5 Cir., 1967, 383 F.2d 36, construed Stovall v. Denno as making the *Wade* and *Gilbert* right to counsel at an identification lineup holdings applicable only to lineups taking place after Monday, June 12, 1967. The lineups here were prior to this date. This prospective application rule of using the date of the lineup or confrontation as the cutoff between applicability and non-applicability of the new constitutional principle is to be distinguished from the rule announced in Johnson v. State of New Jersey, 1966, 384 U.S. 719, 86 S.Ct.

1772, 16 L.Ed.2d 882, respecting the applicability to other cases of the preinterrogation warning procedures required by the cases of Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The prospective application rule announced there was that the new constitutional principles would apply to trials commenced after *Escobedo* and *Miranda* were decided in the Supreme Court.[2]

Appellant's final contention is directed toward the District Court's refusal to permit cross-examination of these two government witnesses regarding the details of the lineups wherein he was identified. Appellant's counsel asked the first of the two witnesses the prefatory question: "Can you tell us a little about the lineup? Did it have other people in it?" The court curtailed this line of questioning at this point. This subject under the circumstances was within the scope of proper cross-examination.

■■ The identification of appellant was the heart of the government's case. Watson, the owner of the check, was rather uncertain in identifying appellant.

---

gloss of a Supreme Court decision on a statute was given effect on the element of wilfulness in a criminal prosecution. On appeal we must judge the case by the present law and not by the law as it existed at the trial. McCloskey & Co. v. Eckart, 5 Cir., 1947, 164 F.2d 257. See Vandenbark v. Owens-Illinois Glass Co., 1941, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327, on the applicability of supervening judicial decisions, and Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, on the general subject of the law, statutory, constitutional or decisional, being applicable as it exists at the time of an appeal.

2. The meaning of the Stovall v. Denno ruling depends on the location of the modifier "after this date." It is nearer "confrontation" than "cases" in the sentence. That ruling: "We hold that Wade and Gilbert affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date", has been uniformly construed as announcing a cutoff date for prospective application

based on the date of the confrontation rather than the date of the case or trial as in Johnson v. State of New Jersey, supra. See dissenting opinion of Mr. Justice Black in Stovall v. Denno, and also People v. Rivers, Cal., 1967, 59 Cal. Rptr. 851, 429 P.2d 171, 173, fn. 3; People v. Doherty, Cal., 1967, 59 Cal.Rptr. 857, 429 P.2d 177, 184–185; State v. Vigliana, N.J., 1967, 50 N.J. 51, 232 A. 2d 129, 137. No court has discussed the obvious argument for a contrary construction: that the Supreme Court would hardly depart from the Johnson v. State of New Jersey prospective application rule without some elucidation; that the court did not expressly announce a departure from the Johnson v. State of New Jersey rule; that such indication of departure as appears is ambiguous if not entirely sub silentio; therefore the modifier applies to cases tried after the date of *Wade* and *Gilbert* and not to cases involving confrontations which took place after that date. This question is, of course, now settled to the contrary in this circuit by Crume v. Beto, supra.

Delk and Kirkland were the drugstore employees who dealt with the person forging Watson's endorsement and uttering the check as endorsed. The fact that appellant had been identified by them in a police lineup was made known to the jury. The rejected cross-examination was an attempt to probe into the circumstances surrounding that identification. Even in post *Wade* and *Gilbert* cases, questions concerning the conduct of the lineup may be relevant in determining the origin of an in-court identification. *Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d at 1164.

■ The fairness of the pretrial lineup depends upon a number of factors such as the general age, racial and other physical characteristics of the participants, including any body movement, gesture, or verbal statement that is required. Its result could be tainted if the witnesses were allowed to view the lineup together and discuss among themselves their conclusions, or if they were allowed even accidentally to see the defendant in police custody just prior to the lineup. Any form of suggestion on the part of the police might foster an unjust result.

■ The denial of the effort of defense counsel to probe into the form and manner of the lineup substantially foreclosed any opportunity to test the fairness of the identification procedure. In this pre-*Wade* and *Gilbert* case, where appellant had no counsel in the pretrial identification process, the facts surrounding the lineup or lineups [3] were highly relevant and should have gone to the jury for such weight as the jury may have wished to give them on the ultimate identification question. Cross-examination of a witness, generally speaking, is a matter of right but its scope and limits are committed to the sound discretion of the trial court. United States for Use of Tennessee Valley Authority v. Robertson, 5 Cir., 1966, 354 F.2d 877. However, as this court stated in Grant v. United States, 5 Cir., 1966, 368 F.2d 658, " * * * it is only after a party has had an opportunity to exercise the right of cross-examination that the discretion becomes operative." Here defense counsel was foreclosed from a relevant area entirely and we hold that it was error to so restrict the cross-examination.

■ The prosecution contends that the evidence of appellant's guilt was overwhelming and that this error, assuming *arguendo* that it was error, was thus rendered harmless. This argument is without basis in fact. The test we have used in the past is whether the error may have had substantial influence on the conviction. "If one is left in grave doubt, the conviction cannot stand." Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L. Ed. 1557; Ahlstedt v. United States, 5 Cir., 1963, 315 F.2d 62; and Mole v. United States, 5 Cir., 1963, 315 F.2d 156. The Supreme Court has recently fashioned an even stricter rule for use in harmless constitutional-error cases. It is that the beneficiary of the error must show beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. The appellate court, having the question to decide, " * * * must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. State of California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. We do not know what the cross-examination might have developed regarding the lineup or lineups. We do know that the proposed examination was relevant. It went directly to the validity of the in-court identification. We conclude that the error was harmful and thus appellant is entitled to a new trial.

Reversed and remanded for further proceedings not inconsistent herewith.

---

3. It is not clear from the record whether there were one or two lineups or whether Delk and Kirkland attended the same or a different lineup or the same lineup separately.