**Lamar RUDD, Petitioner-Appellee,**

**v.**

**STATE OF FLORIDA, Respondent-Appellant.**

**No. 72–2409.**

United States Court of Appeals,
Fifth Circuit.

April 23, 1973.

Robert L. Shevin, Atty. Gen. of Fla., Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellant.

Kathryn L. Powers, Jacksonville, Fla., court-appointed, for petitioner-appellee.

Before JONES, GODBOLD and INGRAHAM, Circuit Judges.

GODBOLD, Circuit Judge:

This appeal is by the State of Florida from the issuance of a writ of habeas corpus for Lamar Rudd, a state prisoner serving a 40-year term for armed robbery of a store. The District Court's order, entered after a full evidentiary hearing and pursuant to a memorandum opinion, 343 F.Supp. 212, directed the immediate release of Rudd from state custody and allowed the state to retry him if it so elected. The error that caused the writ to issue was the introduction at Rudd's state trial of identification testimony that had its roots in assertedly unconstitutional pretrial lineups, show-ups, and photo displays.[1] We affirm.

The robbery for which petitioner was convicted occurred December 7, 1968. It was witnessed by three persons—Tilson, the manager of the store, and Ison and Sweat, two customers who entered just as the robber was leaving. While emptying the cash register at gunpoint, Tilson viewed the bandit from a distance of only a few feet, and Ison and Sweat obtained a glimpse of him from close proximity as they passed him at the door. Nevertheless, none of these witnesses was able to obtain a full view of the robber's face because he wore a cowboy hat with a wide brim pulled down across his eyes. Consequently the witnesses did not note any distinguishing physical characteristics, and they were unable to afford the police with even a moderately detailed description.

Although the three witnesses to the December 7 robbery supplied the heart of the case against Rudd, the state also relied on testimony by two witnesses to a January 3, 1969 robbery of another store. Evidence of this later robbery, which the state contended was also committed by petitioner, was introduced to show a common scheme.[2] The witnesses to the January 3 robbery were Payne, manager of the store, and Loos, a customer. From close range during actual consummation of the robbery, Payne was able to observe the thief, who this time wore a short-brimmed hat pulled low across his

---

1. The District Court found that petitioner had exhausted his state remedies as required by 28 U.S.C. § 2254, the state has not contended otherwise, and the record is devoid of any indication that Rudd did not exhaust.

2. This circuit holds that admission into evidence of similar crimes committed close in time to show general scheme is not constitutional error. Dinkins v. Wainwright, 451 F.2d 587 (CA5, 1971). This is not to suggest, of course, that use of such evidence is nonreviewable in direct criminal appeals. See, e. g., United States v. Rodriguez, 474 F.2d 587 (CA5, 1973).

eyes. During the robbery Loos stood to the rear of the store and saw only the robber's back except for a fleeting moment when the thief glanced around. Loos was not even aware that a robbery was being committed until after the bandit left the store.

At trial defense counsel contended that all the eye-witnesses—those present during the December 7 robbery as well as those present during the later robbery on January 3—had attended constitutionally defective pretrial identification procedures, and accordingly counsel moved to exclude all their identification testimony. The state trial court summarily denied this motion without conducting a hearing outside the presence of the jury to determine either the correctness of counsel's contention or the circumstances surrounding any pretrial identifications that might have occurred. From the full evidentiary hearing conducted by the habeas court, we now know that each of the witnesses to the respective robberies attended one or more of either a lineup, showup, or photo display. Payne and Loos, the two witnesses to the January 3 robbery, attended pretrial lineups at which they identified Rudd as the January 3 bandit. Tilson and Sweat made pretrial identifications of Rudd at a one-man showup in the state attorney's office. Finally, prior to trial Tilson, Sweat, and Ison selected Rudd's picture from spreads of four or five photos.

This is an unusually complex photo display-lineup-showup case raising a plethora of issues. We are here concerned with five witnesses who viewed two separate robberies and who attended three different kinds of pretrial identification procedures. Additionally there were two legally significant categories of testimony at the state trial—testimony by some of the witnesses that they

had identified the defendant at pretrial identification procedures ("pretrial recognition") and trial testimony by all witnesses that the defendant was the thief ("in-court identification"). Moreover, the pretrial recognition testimony may be further subdivided into testimony elicited by the state and testimony elicited by defense counsel to mitigate the force of an in-court identification.

■ Much of the District Court's opinion is devoted to factual reconstruction of pretrial identifications occurring more than four years ago, and we can rearrange that factual composite only to correct clear error. See, e. g., Hines v. Beto, 473 F.2d 1034 (CA5 1973). On this appeal the state has not established any instance of a clearly erroneous finding of fact. Our task, then, is to determine if in light of the findings of fact and the applicable legal standards the District Court reached the correct result —to determine "the constitutional significance to be attached to [the elemental facts]." Neil v. Biggers, 401 U.S. 188, 193, 93 S.Ct. 375, 379, 34 L.Ed.2d 401, 407–408 n.3 (1972).

## 1. LINEUPS

The findings of fact made by the habeas court show that in 1969 Payne and Loos, witnesses to the January 3 robbery, attended pretrial lineups at which, despite his request, Rudd was not represented by counsel. He was exhibited along with four or five other men of similar height, weight, and age. Both the witnesses selected Rudd from these lineups as the January 3 bandit.

At the merits trial neither Payne nor Loos, in response to questioning by the state, testified about his pretrial recognition of Rudd, although they did make in-court identifications of him as the January thief.[3] The District Court

---

3. Under cross-examination Loos mentioned identifying Rudd at a pretrial lineup. Since this testimony was not in response to questioning by the state, "the admissibility of evidence of the lineup identification itself is not involved." United States v. Wade, 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149, 1165 (1967). Compare Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (state elicits testimony of pretrial recognition at lineup; court reviews admissibility of that testimony). Indeed constitutional error might have

made a finding of fact not clearly erroneous that their in-court identifications were based on recollections formed at the lineups, not on their recollections from the crime. Consequently, if the pretrial lineup did not meet constitutional standards, then the witnesses' in-court identifications were the fruit of a forbidden procedure and should not have been used in the state's case. United States v. Wade, 388 U.S. 218, 239–242, 87 S.Ct. 1926, 18 L.Ed.2d 1149, 1164–1166 (1967).

In Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and United States v. Wade, *supra*, the Supreme Court held that postindictment lineups conducted without presence of counsel, and in the absence of a valid waiver of counsel, are unconstitutional. The District Court concluded on authority of these decisions that the lineups in issue were constitutionally defective. Unquestionably Rudd was denied counsel at the lineups. As Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 417 (1972), makes clear, however, the *Wade-Gilbert* right to counsel attaches only "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, or arraignment." In this case the District Court did not find precisely when the lineups occurred, which is understandable since Kirby v. Illinois was not decided until one week after Rudd had been granted his writ of habeas corpus. The absence of a finding as to time of occurrence makes it impossible to determine whether the lineups in issue were conducted in violation of the *Wade-Gilbert* right to counsel.

Since a new trial is warranted for reasons we will presently discuss a remand to the District Court for resolution of the Kirby v. Illinois issue is unnecessary; it may appropriately be resolved by a state trial court should the state retry petitioner. Compare Kimbrough v. Cox, 444 F.2d 8, 11 (CA4 1971); United States ex rel. Phipps v. Follette, 428 F.2d 912, 915–916 (CA2), cert. denied, 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970), with United States ex rel. Rivera v. McKendrick, 448 F.2d 30 (CA2 1971), cert. denied, 404 U.S. 1025, 92 S.Ct. 678, 30 L.Ed.2d 675 (1972). See also Collins v. Estelle, 474 F.2d 988 (CA5 1973).

■ The District Court also held that the state trial court committed constitutional error by permitting Payne and Loos to make in-court identifications without first determining that their recollections were not rooted in the illegal lineups. This statement was erroneous if by it the District Court meant that failure to hold a hearing outside the jury's presence on the independent origin issue was by itself sufficient cause for new trial. Both *Wade* and *Gilbert* were direct criminal appeals in which the lower courts permitted in-court identifications by witnesses who had attended constitutionally defective pretrial identification procedures without first determining that the in-court identifications were of untainted origin. In each case the Supreme Court vacated the convictions and remanded to the trial court for a finding on the independent origin issue. In essence, both *Wade* and *Gilbert* establish that the state at the minimum is entitled to one opportunity to adduce evidence in support of independent origin. Normally the state should be allowed to discharge that burden at the federal evidentiary hearing, if not previously discharged at trial or other postconviction proceedings.[4]

---

been committed had the trial court prevented defense counsel from proving pretrial recognition in an attempt to mitigate the force of the in-court identification. See Pearson v. United States, 389 F.2d 684, 687–688 (CA5 1968).

4. Our discussion assumes, of course, that the petitioner has exhausted his state remedies.

## 2. SHOWUP

Tilson and Sweat, two of the witnesses to the December 7 robbery, testified at trial in response to the prosecution's questioning that they had identified Rudd at a pretrial showup. The habeas court in reconstructing this pretrial showup found that state investigators had called Tilson and Sweat to the state attorney's headquarters and that the witnesses had there viewed Rudd as he sat in a small office. Rudd was alone except for two or three other police officers who were seated nearby, and he was unaware that a showup was in progress.

■ Under Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967), pretrial identification procedures "unnecessarily suggestive and conducive to irreparable mistaken identification" may violate due process without regard to the *Wade-Gilbert* right to counsel. The District Court did not err in ruling that the showup arranged by the police was impermissibly suggestive and in violation of the standards enunciated in Stovall v. Denno. By inviting the witnesses to view the suspect as he sat alone in the state attorney's office beside one or two police officers, the police in effect suggested that *"This is the man."* Foster v. California, 394 U.S. 440, 443, 89 S.Ct. 1127, 22 L.Ed.2d 402, 407 (1969) (italics original). Such singling out, or indicating to the witness that the man in custody is the man the police believe to have committed the crime, is a classic example of impermissible suggestiveness. See Crume v. Beto, 383 F.2d 36, 39 (CA5 1967), cert. denied, 395 U.S. 964, 89 S.Ct. 2106, 23 L.Ed.2d 749 (1969). Consequently the state committed constitutional error in eliciting testimony of identifications made at this tainted procedure, and since it has made no attempt to show that its error was harmless beyond a reasonable doubt under the teachings of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), petitioner is entitled to federal habeas relief. Should the state decide to retry petitioner, it must do so without testimony of identifications made at the showup.

■ Aside from their testimony of pretrial recognition at the showup, Tilson and Sweat also made in-court identifications of Rudd. For the test by which to gauge the admissibility of in-court identifications by witnesses who have attended impermissibly suggestive pretrial identification procedures, we look to Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In *Simmons* the Court held that the state commits constitutional error in eliciting in-court identifications by witnesses who have attended pretrial identification proceedings "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 384, 88 S.Ct. at 971, 19 L.Ed.2d at 1253. While the habeas court did, as we have noted, correctly determine that the showup was impermissibly suggestive, it did not specifically find that the showup was likely to induce *irreparable* misidentification, a finding indispensable to proper application of the *Simmons* test. See Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, 410–411 (1972); United States v. Sutherland, 428 F.2d 1152, 1155 (CA5 1970). On this cold record we cannot make the required factual determinations. For example, irreparability of suggestiveness may hinge in part on the strength of the witnesses' preshowup recollections, which can best be measured by one having an opportunity to observe the witnesses' demeanors under questioning. As with the lineups, however, we conclude that a remand to the federal District Court is unwarranted. The issue of irreparability may appropriately be resolved by the state trial court should the state retry petitioner. Without a favorable finding on this issue the state should proceed without in-court identifications by Tilson and Sweat.[5]

5. The District Court also concluded that the showups were conducted in violation of Rudd's *Wade-Gilbert* right to counsel. We agree that the showup in issue is gov-

### 3. PHOTO DISPLAYS

*a. Tilson display*

Tilson, manager of the store robbed on Dec. 7, testified at the state trial in response to questions of the prosecution that he had identified Rudd at a pretrial photo display. Testimony at the habeas hearing reveals that Tilson was shown a group of five or six photographs of men not markedly dissimiliar in appearance from petitioner. The habeas testimony also shows that the police manipulated the photographs to make some of the men appear as if they were wearing a hat. Tilson testified under questioning by Rudd's counsel at the evidentiary hearing:

THE WITNESS:

Well, when he robbed the store, he was wearing a cowboy hat and they took it like, turned the picture over and blocked the top part of his head off, you know, all of them, one at a time.

THE COURT:

The detectives?

THE WITNESS:

Yes, sir.

.    .    .    .    .    .

Q. When you were shown the photographs, did you pick Mr. Rudd's picture out immediately or did the police officers put on the hats before you picked Mr. Rudd's picture out?

A. I picked two out first and then they put the hats on and then I—

Q. You picked out two photographs because wou weren't sure—you weren't sure which of the two was the man who robbed the store and then the police officers put the hats on the pictures to help you identify the robber?

A. Yes, ma'am.

Q. When the police called and asked if they could come to your home, did they say that they had a suspect?

A. No, ma'am, they didn't call. They just knocked on my door.

Q. When they knocked on your door and entered your home, did they tell you that they had a suspect?

A. No, ma'am, they just asked me to look at some pictures.

In light of this testimony the District Court concluded that the police had suggestively manipulated the photographs by making them to appear to wear hats, and accordingly found that the state committed constitutional error by eliciting

erned by *Wade-Gilbert* principles. It was staged at the station house by the police for the purpose of exhibiting Rudd in connection with the specific offense for which he was then in custody. Under these circumstances it would be illogical to deny the applicability of *Wade-Gilbert* solely because the police did not hold a formal lineup under the lights with more than one subject on display. See Rivers v. United States, 400 F.2d 935, 940 (CA5 1968). See generally Comment, The Right to Counsel at Lineups: *Wade* and *Gilbert* in the Lower Courts, 36 U.Chi. L.Rev. 830 (1969). Under Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), however, a showup governed by *Wade-Gilbert* would be constitutionally defective only if it was held after initiation of adversary judicial criminal proceedings. Since the District Court did not find precisely when the showup occurred, we cannot determine whether Rudd's right to counsel was denied.

We have already held that the showup was impermissibly suggestive within the meaning of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Without regard to the *Wade-Gilbert* right to counsel the state should not use testimony as to identifications made at the showup should it decide to retry petitioner. Use of the second category of testimony—*i. e.* an in-court identification by Tilson or Sweat—would be conditional upon a favorable finding on the Kirby v. Illinois issue concerning time of occurrence or a finding that the in-court identifications would be of an origin independent of the showup, United States v. Wade, 388 U.S. 218, 239–242, 87 S. Ct. 1926, 18 L.Ed.2d 1149, 1164–1166 (1967). These prerequisites would, of course, be in addition to the necessity of a favorable finding on the irreparability issue discussed in text.

testimony at the state trial as to Tilson's identification made at the defective display.

■■ Application of Stovall v. Denno to the elemental facts compels us to disagree with the habeas court. Accenting the features of a particular photograph to focus the witness' attention on it indeed will often be impermissibly suggestive. As this court explained in Crume v. Beto, 383 F.2d 36 (CA5 1967), cert. denied, 395 U.S. 964, 89 S.Ct. 2106, 23 L.Ed.2d 749 (1969):

> The fault common to all these practices is that the police single out one person and influence the witness by directing attention to some element known to be connected with the crime —the unique appearance of the suspect, the words spoken in the course of the crime, or clothing similar to the suspect's clothing. The necessary result of this singling out is to suggest to the witness that the suspect so isolated is in fact the one the police think is guilty.

*Id.* at 39. Impermissible singling out does not necessarily occur, however, when the police attempt to reenact the atmosphere of the crime by having all subjects wear clothing similar to that worn by the bandit, or by having only two or three of the subjects wear similar clothing if the witness has already narrowed his choice to those two or three subjects. To the contrary, reenactment of crime atmosphere is often the preferred identification procedure. Wigmore suggests:

> At the time of *presenting for recognition,* whether upon arrest or at trial in the courtroom, measures should be taken to increase the simulus of association and to decrease the risk of false suggestion. (a) The person to be identified should be clothed and placed (so far as feasible) in the same conditions as when originally observed. (b) The person to be identified should be presented in company with a dozen others of not too dissimilar personalities.

3 Wigmore, Law of Evidence § .786a, at 206 (Chadbourn rev. ed. 1970) (italics original). This circuit has expressly approved such stimuli of association, provided they are not used to direct the witness' attention to a particular subject. Thus in Crume v. Beto, *supra,* we upheld the practice of placing a hat on a subject and having him say, "This is a stick-up," because the witness had already made a tentative identification and the associational procedures were merely to test her initial impression.

The facts adduced at the habeas hearing were that the police did not make the photographs appear to wear hats until Tilson had already narrowed his choice to two photographs, and at that time the police made both of the photos appear to wear hats. Consequently, the police did not, within the meaning of Stovall v. Denno, impermissibly focus attention on a particular photograph.

*b. Ison-Sweat display*

Ison and Sweat, customers in the store on December 7, also attended a pretrial photo display at which they selected Rudd from a spread of four or five photographs, and they testified at state trial in response to the prosecution's questions as to these pretrial recognitions. The habeas court held that the photo display was impermissibly suggestive within the meaning of Stovall v. Denno, and that the state consequently committed constitutional error in eliciting testimony of identifications made at this display.

■ We find no error in the holding of the habeas court that this display was impermissibly suggestive. From testimony at the merits trial and at the habeas hearings, we know that the police brought four or five photos to the home of Miss Sweat and there staged a display in the presence of both Ison and Sweat. While Miss Sweat was momentarily absent from the room, Ison picked up one of the photos from the table and began scrutinizing it. When Miss Sweat returned and while Ison was holding Rudd's photo in his hand, both Ison and Sweat at the same time identified it as

the photo of the thief. The District Court essentially found that the witnesses made mutually reinforcing identifications that they might not have made independently. On the facts of this case, we are not able to say that the District Court erred in holding the mutually reinforcing, simultaneous identifications to be improper. In reaching this conclusion we consider as important the witnesses' lack of opportunity to obtain a clear view of the bandit at the crime as well as the ample time available to the police for staging separate displays.

■ In connection with the display the District Court articulated an erroneous per se rule concerning simultaneous identifications by two or more witnesses. The court said: "Thus, this Court holds that any simultaneous identification of a suspect by two or more witnesses in the presence of each other is so impermissibly suggestive as to amount to a denial of due process, and any subsequent in-court identifications must be subjected to a per se exclusionary rule." Pretrial identification procedures should not be found impermissibly suggestive on the basis of rigid application of categorical rules. For example, indicia of reliability such as a witness' strong recollection from an independent, untainted source may in some cases counteract the suggestiveness in certain identification procedures. Also, exigencies of efficient police work may occasionally justify identification procedures that in other contexts would be unnecessarily suggestive. Because of these and other variables spanning the range of human experience, courts have wisely counseled against determination of constitutionally impermissible suggestiveness on other than a case-by-case basis. See, e. g., United States v. Sutherland, 428 F.2d 1152, 1156 (CA5 1970); Pearson v. United States, 389 F.2d 684, 688 (CA5 1968). In short, due process inquiries into impermissible suggestiveness should be made in the absence of per se rules.

In addition to their testimony of pretrial recognition, both Ison and Sweat made in-court identifications. As noted previously, the constitutionality of such in-court identifications must be measured by the *Simmons* test of conduciveness to irreparable misidentification. As we read the opinion below, the habeas court did not apply this test to determine whether the in-court identifications were constitutionally permissible. As we have held in another part of this opinion, however, this issue may be appropriately resolved by a state trial court if the state retries petitioner. Subject to a favorable finding on this issue, the state should proceed without an in-court identification by either Sweat or Ison.[6] Also, because the display itself exceeded the bounds of permissible suggestiveness, the state should not elicit testimony as to recognitions made at the display.

Affirmed.

---

6. Use of an in-court identification by Miss Sweat should, of course, be conditioned on the other prerequisites we have discussed in connection with the impermissibly suggestive showup, which Miss Sweat also attended.