**UNITED STATES of America ex rel. Freddie Lee DAVIS, Petitioner-Appellant,**

v.

**Hon. Harold W. FOLLETTE, Warden of Greenhaven Prison, Respondent-Appellee.**

No. 382, Docket 30856.

United States Court of Appeals Second Circuit.

Argued Feb. 18, 1969.

Decided March 24, 1969.

Andrew D. Ball, New York City (Anthony F. Marra, New York City), for petitioner-appellant.

Hillel Hoffman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., Stephen Seligman, Deputy Asst. Atty. Gen., of Counsel), for respondent-appellee.

Before Mr. Justice CLARK,* and WATERMAN and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge:

Freddie Lee Davis was convicted by a New York State court in 1962 of first-degree rape, second-degree assault, carnal abuse of a child, and endangering the life or health of a child in Newburgh,

* Retired Associate Justice of the Supreme Court of the United States, sitting by designation.

N. Y. On his appeal the Appellate Division for the Second Department directed the trial judge to hold a hearing, in accordance with Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), with respect to the voluntary character of a written confession made late on the evening of the crimes after Davis had been shown the girl at the Newburgh police station. See 22 A.D.2d 921, 255 N.Y.S.2d 639 (1964). The trial judge ruled that the confession was voluntary; the Appellate Division upheld this conclusion and affirmed the conviction, 24 A.D.2d 607, 262 N.Y.S.2d 390 (1965); and leave to appeal to the Court of Appeals was denied.

Davis then filed a petition for habeas corpus in the District Court for the Southern District of New York. The points argued there were that the confession and testimony regarding oral admissions made by him to police officers were improperly received in evidence at his trial because (1) the statements were involuntary; (2) they were obtained during an unreasonable period of detention; and (3) they were the result of an illegal arrest. Judge Murphy denied the petition after study of the records of the state trial and the supplementary hearing. He concluded that the first claim was foreclosed by state factual determinations that did not warrant federal re-examination; that the second, even if established, would not suffice by itself to upset the conviction, see United States ex rel. Glinton v. Denno, 339 F.2d 872 (2 Cir. 1964), cert. denied, 381 U.S. 929, 85 S.Ct. 1570, 14 L.Ed.2d 688 (1965); and that Davis had failed to exhaust state remedies with respect to the third. On appeal Davis presses the claim that the confession and admissions were involuntary and another, apparently responsive to the Supreme Court's later decision in Stovall v. Denno,

388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967), that the circumstances of his identification by the victim were so impermissibly suggestive as to deny due process of law.

 Davis' contention that his confession and admissions were the product of physical abuse by the police presented the usual conflict. On the one hand were his own evidence with respect to the policemen's conduct and testimony by his wife, his sister-in-law, and a fellow prisoner concerning their observations of bruises and his complaints to them at the time of arraignment and after he had been taken to jail. Against this were denials by the police officers, lack of complaint by Davis to the judge at arraignment, failure by the booking officer at the jail to observe any bruises, absence of complaint at that time, Davis' admitted failure to call the bruises to the attention of a doctor who was brought to the jail a few days later to administer to a stomach ailment, and numerous contradictions in the stories of Davis and his witnesses. The New York courts resolved this conflict against Davis; he has failed to bring himself within any of the eight reasons that permit a federal court to override such a factual finding by a State court, 28 U.S.C. § 2254(d).[1]

 We need not debate whether Davis exhausted state remedies on the identification point, 28 U.S.C. § 2254(b), since the State makes no objection to our considering the issue. The sexual assault, on a 7-year-old Negro girl, occurred around 7:30 P.M. in late September. After going home, distraught and bleeding from the vagina, she told her mother her attacker was a white man and tried to describe what he looked like, but both were too upset to pursue this. The mother took the child first to a hospital, where she was examined and treated, and then to the police station,

---

1. Although this amendment to § 2254, 80 Stat. 1105, had not been enacted at the time of Judge Murphy's decision in June 1966, the appeal from which has been an unconscionable time in reaching us, it is binding upon this court. In any event,

as we have recently stated, United States ex rel. Hughes v. McMann, 405 F.2d 773 (2 Cir. 1968), the 1966 statute "in the main codified" Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

where the father joined them. There they saw Davis in a room with two police officers, also white, and the girl identified him.[2] In evidence which the judge permitted her to give at the trial without being sworn, N.Y. Code of Cr.Proc. § 392, she testified to this and also identified Davis in the court room.

We need not pass on the relative merits of Davis' contentions on the score of darkness, the victim's youth, the traumatic experience she had suffered, and the allegedly suggestive nature of her view of Davis in the police station, and of the State's direct ripostes—that it was light enough for the little girl to see her attacker; that, in contrast to cases where there was only a fleeting glimpse, she had all too ample opportunity for close observation; and that her overwrought condition had subsided by the time of the identification. Davis' claim is drained of force by the testimony of the parents, a police officer and himself that when the girl and her parents entered the room at the police station, he said, in answer to a question by the policeman, that this was the girl he had raped. The attempt to avoid this on the basis that Davis was still under the fear created by the policemen's applications and threat of force shatters on the State court's finding that this did not occur. Moreover our own reading of the record would lead us to reject the explanation. Although the record is unclear whether Davis' identification of the girl followed or preceded hers of him, we do not regard this as crucial. If it followed, it afforded confirmation so impressive as to remove concern. And even if it preceded the girl's identification, while this would have been another element of suggestion to her, Davis' admission would be such a strong additional element for conviction[3] as to leave little room for doubt that the iden-

2. She mentioned one police officer as being in the room, but apparently there were two.

3. Davis' shorts, which were introduced at trial, had blood stains. While efficient police work would have included an examination for blood types and for the

tification was correct. Cf. United States ex rel. Rutherford v. Deegan, 406 F.2d 217 (2 Cir. 1969), slip opinions 971.

Affirmed.

presence of semen that was not here performed, the existence of the stains and Davis' incredible explanation of them on the basis that he sweated a lot and used cologne, constituted strong bases for a finding of guilt.