**Jimmie Curtis ROPER, Petitioner-Appellee,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent-Appellant.**

**No. 31101.**

United States Court of Appeals,
Fifth Circuit.

Dec. 28, 1971.

Rehearing and Rehearing En Banc Denied Feb. 1, 1972.

———◆———

Dunklin Sullivan, Asst. Atty. Gen., Crawford C. Martin, Atty. Gen. of Tex., Nola White, First Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., Robert C. Flowers, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Thomas W. Hathaway (Court-appointed), Johnson, Hathaway & Jackson, Tyler, Tex., for petitioner-appellee.

Before O'SULLIVAN,* THORNBERRY and DYER, Circuit Judges.

O'SULLIVAN, Senior Circuit Judge:

The State of Texas appeals from a judgment of the United States District Court for the Eastern District of Texas granting petitioner-appellee, Jimmie Curtis Roper, a writ of habeas corpus. Roper had been convicted of rape upon a jury trial had in the District Court of Smith County, Texas. The jury fixed his punishment at 75 years imprisonment. The United States District Judge determined that a voice identification of Roper by his alleged victim was made under such circumstances as to deny him due process. The District Judge held that notwithstanding a signed and voluntary confession of the crime by Roper, introduction of the voice identification evidence could not be considered as harmless error. The District Judge's opinion is reported as Roper v. Beto, 318 F.Supp. 662 (E.D.Texas, 1970).

The evidence established that Joan Sumner, a 27 year old secretary, returned to her apartment in Tyler, Texas, from work on October 26, 1962. As she opened and then closed the apartment door, she was grabbed from behind by an assailant holding a knife to her throat. He ordered her to place two pieces of adhesive tape over her eyes and mouth which he pressed firmly on. Her wrists were then bound with venetian blind cords and she was tied to her bed. The adhesive tape and the cord had been made ready for this planned assault. After disrobing and raping her, the rapist talked to complainant for some thirty or thirty-five minutes, removing the tape from her mouth at times for her to answer. Because of the nature of the attack, the prosecutrix was unable to make a visual identification of her attacker, but she was in a position to attempt identification of his voice.

Appellee was arrested as a suspect three days later and taken to the police station. Complainant was brought down to the station and positioned a few feet outside of the office in which appellee was being questioned. The door of the office had been left open. She identified the voice as that of petitioner Roper.

At trial, she testified as to this voice identification. The officer who participated in this identification verified her account of it. Also introduced was a confession signed by Roper which confirmed the details of the rape as testified by complainant, and told of his activity awaiting her arrival—equipping himself with a knife and preparing the tape and cutting the venetian blind cords. It also related that he was 24 years old, that his wife had gone visiting for a week, and that on the previous day he had watched the complainant, who lived in the same building, coming home from work about 5:00 o'clock and that he then decided he wanted to have intercourse with her. He stated that although he had seen her in passing several times, he had had no conversation with her. No challenge was made to the voluntariness of the confession, and the petitioner did not take the stand in his defense. Roper's confession is attached as Appendix A.

---

* Senior Circuit Judge, Sixth Circuit, siting by designation.

Admissibility of the voice identification evidence and Roper's confession were not questioned at trial. The only point raised on an original appeal to the Court of Criminal Appeals of Texas was the trial court's refusal to allow defense counsel to attempt an attack upon the previous chastity of the prosecutrix. In affirming the conviction, the Texas court, in Roper v. State, 375 S.W.2d 454 (Tex.Crim.App.1964) said:

"We agree that when the issue of consent is raised, proof of specific instances of unchastity with appellant may be admissible, however, we cannot agree that the issue of consent is raised by a plea of not guilty in a cause in which rape by force is the offense. When the offense is rape by force and there is no issue of consent there is no defense that the woman was not a chaste female. Tyler v. State, 145 Tex.Cr.R. 315, 167 S.W.2d 755." 375 S.W.2d at 456.

In 1966, by petition for habeas corpus relief in the trial court—the District Court of Smith County, Texas—Roper challenged the admissibility of his confession, not on a claim of its involuntariness but on the asserted ground that he should have been provided a lawyer before he confessed. The state judge held a full evidentiary hearing, and in denying relief said:

"Jimmie Curtis Roper did not request and was not denied the assistance of counsel prior to making a written statement to a member of the District Attorney's staff on the morning of his arrest."

This ruling was affirmed on appeal to the Court of Criminal Appeals of Texas, Ex parte Roper, 408 S.W.2d 929 (Tex. Crim.App.1966). The Texas Court said:

"Under the evidence, the court was warranted in finding that appellant did not request to see an attorney prior to making the confession.

"The fact that appellant was not advised that he had the right to consult with counsel did not render his confession inadmissible in his trial, which began February 21, 1963.

"The cases of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, have been held not to be retroactive" 408 S.W.2d at 930–931.

In September, 1967, Roper again went into the Texas trial court to challenge the admissibility of his confession. Relief was again denied, and it does not appear that an appeal was prosecuted to the Court of Criminal Appeals.

In November of 1969 petitioner made his first challenge to the admissibility of the voice identification evidence. This was done by another petition for habeas corpus relief in the District Court of Smith County, Texas. He was denied relief in the trial court and in the Texas Court of Criminal Appeals. On January 27, 1970, the present proceeding had its beginning by petition for habeas corpus relief in the United States District Court for the Eastern District of Texas, Tyler Division. This petition asserts:

"Petitioner further contends that in none of these prior attempts to secure post-conviction relief was the issue of this unlawful pre-trial confrontation raised, either directly or inferentially."

His petition further asserts that he "did in fact strenuously object to introduction of this unlawful evidence [the voice identification]." There is nothing in the record presented to this Court to sustain his claim of trial objection to the identification evidence.

We are called upon to determine whether on the "totality of the circumstances" surrounding the voice identification of Roper, the transaction was "so unnecessarily suggestive and conducive to irreparable mistaken identification" that Roper was denied due process of law by admitting into evidence testimony concerning it. Such is the rule of Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct.

1967, 18 L.Ed.2d 1199 (1967), in which the Supreme Court determined that pretrial identification procedures, conducted before its decisions in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), such as the identification involved here, would be governed by due process standards and not by retroactive application of the right to counsel standard for lineups. It was made clear in Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968), that the *Stovall* rule means that a particular identification process must be more than somewhat suggestive and will be set aside only if "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384, 88 S.Ct. at 971.

■ One man showups have not been adjudged per se violative of due process. They have been condemned as suggestive, but whether a particular showup and identification violates due process is dependent on the "totality of the circumstances." The particular concern of the courts is whether the showup has produced reliable identification evidence or the likelihood of misidentification.

Cases finding that a particular showup did violate due process considered additional facts, beyond that of the one man factor itself, which pointed towards the unreliability of the identification. In Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966), the court set aside a one man showup involving essentially a voice identification. The night of the rape, a normal lineup was conducted and complainant heard and saw five men, but no identification was made. The following day, complainant was seated outside an open door to an office in which the suspect, unseen by her, was being questioned. She then identified the voice, but only after being told before listening to the voice that the police had a Negro suspect in custody and being shown the suspect's shirt which she later testified was about the same color as her assail-

ant's. Moreover, the suspect was led to repeat certain phrases or "damning words" uttered by her assailant. The assailant had worn a closely fitting heavy paper bag over his head, which bag was not worn during the interrogation, but was in police possession.

In Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), the first lineup conducted by the police featured three men, but the suspect stood out from the other two because of his height and the fact he wore a jacket similar to that worn by the robber. When this did not produce an identification, the witness was confronted with the suspect in a one to one confrontation, after which the witness' identification was still tentative. Finally, some days later, another lineup was held in which the suspect was the only person who had also been in the first lineup. Although this finally produced a definite identification, the Supreme Court found that the procedure so undermined reliability of the identification as to violate due process.

It is our view that the courts require more than the fact of a one man showup to find a denial of due process in admitting at trial either in-court eyewitness identification testimony or identification testimony based on a pretrial confrontation. In the instant case we do not have an in-court identification, but testimony of a voice identification occurring at an alleged improper showup. No independent source for the identification is possible and the showup itself must be found not to violate due process for the identification testimony to be admissible, otherwise it is the direct result of an illegal confrontation exploiting the primary illegality. Gilbert v. California, 388 U.S. 263, 273, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Rivers v. United States, 400 F. 2d 935, 941 (5th Cir. 1968).

■ We do not find here the additional factors of suggestiveness or indications of unreliability present in *Palmer*, supra, and in Biggers v. Neil, 448 F.2d 91 (6th Cir. 1971). The fact that a voice identification is involved does of course present a factor concerning reliability.

*Palmer* did question the reliability of voice identification, but in the context of the previously noted suggestive elements of the confrontation. We do not believe a voice identification itself is a per se violation of due process, but a factor to be considered in evaluating the validity of the showup under *Stovall*. We believe that if the confrontation itself is not found improper the validity of a resulting voice identification should be left for a jury. See Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280, 1285 (1969), cert. denied, 395 U.S. 928, 89 S. Ct. 1786, 23 L.Ed.2d 245; Hancock v. Tollett, Warden, 447 F.2d 1323 (6th Cir. 1971).

■ Complainant here had listened to Roper talk to her for some 35 minutes after the rape. This allowed her ample time to become familiar with Roper's voice. Identification was made just three days later. True, complainant did go to the police station with the knowledge that the police did have a suspect, but such suggestiveness is practically inherent in any one man confrontation. At the station house, complainant's identification of Roper's voice was strong. The officer with her when the identification was made testified that upon recognizing the voice "she about got sick—just couldn't hardly talk, got real nervous."

This Circuit's feelings with regard to one man showups, and criticism thereof, are recorded in Crume v. Beto, 383 F.2d 36 (5th Cir. 1967), cert. denied, 395 U.S. 964, 89 S.Ct. 2106, 23 L.Ed.2d 749. We would note, however, that "[d]ue process does not require the states to adopt the fairest possible procedures, but only to avoid 'offending some principle of justice so rooted in the traditions and conscience of the people as to be ranked as fundamental.'" *Crume, supra,* at 40. The Fourth Circuit has said that "[d]ue process does not require that every pretrial identification of a witness must be conducted under laboratory conditions of an approved lineup." United States v. Davis, 407 F.2d 846, 847 (4th Cir. 1969).

We hold that in the totality of the circumstances of this case, the identification procedure was not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. The identification testimony did not offend due process.

■ Although our holding above does not so require, we emphasize that any concern for the identification testimony was removed by Roper's confession. We hold that in the light of the confession read into evidence, any error, if any, was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In making this determination, "[o]ur judgment must be based on our own reading of the record and on what seems to us to have been the probable impact [of the voice identification] on the minds of an average jury." Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969). The case against Roper consisted of his confession, complainant's testimony concerning the details of the rape and her voice identification of Roper. Cross-examination of complainant clearly brought out to the jury that her identification of Roper was by voice only and that she could not then in court physically identify Roper as her assailant. Roper's admission then that he was in fact the attacker, corroborating the details of the affair testified to by complainant, left little room for doubt as to Roper's guilt and that the identification was correct. *Cf.* United States ex rel. Davis v. Follette, 410 F.2d 1135 (2d Cir. 1969).

The District Judge speculates that but for the voice identification evidence, the jury might not have believed Roper's confession, notwithstanding its clear admission of guilt. He suggests that the confession itself and the voice identification evidence contained discrepancies and that except for their both having been received in evidence, the jury might have disbelieved the confession and acquitted

Roper. We quote from his opinion as follows:

"Also, it should be noted that since the prosecutrix was English, some of the dangers of voice identification, referred to in the material quoted above from *Palmer,* were inherent in this situation." 318 F.Supp. at 665.[1]

And also:

"[I]t might be wondered how the alleged rapist happened to choose such legalistic language as 'My private parts penetrated her private parts.'" 318 F.Supp. at 668.[2]

Respectfully, we must observe that, to us, the foregoing quotations are inconsequential and meaningless.

The judgment of the District Court is reversed.

### APPENDIX

STATE OF TEXAS }
COUNTY OF SMITH }

Date: October 30, 1962

I, JIMMIE CURTIS ROPER, being in custody of Lt. Joe Elliott, Detective Tyler Police Dept., Smith County, Texas, having been first warned by R. S. Burruss, Asst. Criminal District Attorney of Smith County, Texas, the person to whom the hereinafter set out statement is by me made, that I do not have to make any statement at all, and that any statement made by me may be used in evidence against me on the trial for the offense concerning which this statement is made, do here make the following voluntary statement in writing to the said R. S. Burruss:

"My name is JIMMIE CURTIS ROPER; I am 24 years old and live at 410 W. Oakwood, Apt. 5, Tyler, Texas.

"My wife has been gone about a week off visiting. Last Thursday evening, the 25th of October, I was in my apartment and I saw this girl coming in from work about 5:00 o'clock that lives in the downstairs apartment where I live. I decided then that I wanted to have intercourse with her. I had only spoke to the girl one time and had never had any conversation with her but had seen her in passing several times. We live in the same apartment house.

"Friday afternoon, October 26, 1962, I went down to her apartment about 3:00 o'clock and I carried a butcher knife with me and some adhesive tape. I stayed there until she came in around 5:00 o'clock in her apartment. I had already striped the adhesive tape and stuck one end on the door fasten. When she came in I grabed her around the neck from the back and put this knife to her throat and told her to do what I wanted her to and she wouldn't get hurt. She asked me "what do you want?" and I told her "to do what I told you and then you will see." I told her to take the adhesive tape off of the wall and put it across her eyes and she did. Then I told her to put some of it over her mouth. Then I lead her over to the bed and told her to lay down on the bed. I already had the blind cord cut before she got there. I took the venetian blind cord and tied one hand to the corner of the bed and the other hand to the other corner of the bed. I started to taking her clothes off and I would release one hand at a time and take her clothes off and tie it back. I took all of her clothes off, brassiere, pants and all and then I had intercourse with her. My private parts penetrated her private parts. After I had intercourse with her I sat there and talked to her awhile and waited until it got dark. I released one hand and her eyes were *still* taped and I walked to the door and decided to leave and there was a gentleman in the house next door. I walked out of her door

---

1. Joan Sumner had come to Texas from her native England some five years before the involved event.

2. A careful prosecutor would likely make sure that the crime of rape was complete by inquiry whether his (Roper's) "private parts penetrated her private parts." Repetition of this language in the confession was quite logical.

which is on the east side of the house and walked around to the front and went up to my apartment. I was in her apartment about an hour and fifeen minutes after she got there. I went up to my apartment and put my clothes on and gathered all of the dirty clothes and went to the washer. I had the tape on her eyes all of the time that I was in there. That Thursday evening when I saw her come in was when I made up my mind that I wanted to have intercourse with her.

Jimmie Curtis Roper"

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is DENIED.