**Elmer George ROE, Petitioner,**

v.

**The PEOPLE OF the STATE OF NEW YORK.**

**Civ. No. 1971–450.**

United States District Court,
W. D. New York.

Sept. 10, 1973.

Henrietta M. Wolfgang, The Legal Aid Bureau of Buffalo, Inc., Buffalo, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen. (Bedros Odian, Buffalo, N. Y., of counsel), for respondent.

CURTIN, District Judge.

In 1969 after a trial by jury in Monroe County Court, petitioner Elmer George Roe was convicted of first degree rape and first degree assault and sentenced to concurrent terms of imprisonment of eight to twenty-five years and up to fifteen years. His conviction was affirmed by the Appellate Division, Fourth Department, 36 A.D.2d 1012, 321 N.Y.S.2d 450 (4th Dept. 1971), and leave to appeal to the Court of Appeals was denied. The instant petition for a writ of habeas corpus followed.

The basic facts relating to the crimes for which petitioner was convicted are as follows.[1] At approximately 8:45 p. m. on January 14, 1969 a fifteen year old girl [hereinafter referred to as Miss K] left her home on Avenue D in Rochester, carrying a radio. As she walked along Conkey Avenue a man came up to her, put his arm tightly around her

---

1. In a memorandum dated October 27, 1969 the trial judge made findings of fact relating to the identifications of petitioner by Miss K and Mrs. Lagasse. His findings form the basis of the factual statement given here, although certain additional facts disclosed by the transcript are referred to.

waist and told her that he had a knife and that she should not scream. He dragged her to the yard behind a nearby house and garage, where he made her commit oral sodomy and then ripped off her clothes and raped her. Finally he jumped over a fence and left her lying in the yard.

At approximately 7:00 or 7:30 p. m. on the evening of the crime Joanne Lagasse left her home at 10 Conkey Avenue to go to a nearby store. Near the store a man passed her, looked her "up and down" and said, "um-um." While she was in the store she saw the man walk by. Later in the evening, after she had returned home, Mrs. Lagasse looked out the front window of her home and saw the same man pulling a girl she later identified as Miss K. The man appeared to be drunk. At one point he fell and the girl tried to run away but he caught her. The couple then went out of Mrs. Lagasse's view.

Prior to petitioner's trial, the court held hearings to determine the admissibility of identification testimony by Miss K and Mrs. Lagasse, of testimony by police officers relating to an oral confession given by petitioner and of a written confession signed by petitioner. The facts relevant to the admissibility of these items which were revealed at the hearings are as follows:

Miss K first observed her assailant just prior to his grabbing her. After he did so, she had the opportunity to observe his face as he dragged her toward the yard and during the rape, a time totalling approximately twenty minutes. She described her assailant to the police as a white, stocky man with dark hair and a curl who was wearing a dark jacket. On several occasions following the crime, the police showed Miss K photographs to determine if any depicted her assailant. On January 17, 1969 they showed her approximately fifteen photographs, including one of petitioner taken in 1962, but she failed to make an identification. On April 17, 1969 they showed her several photographs, telling her they were interested in one in particular. She said that the first two did not portray her assailant but that she wasn't sure about the last, which in fact was either petitioner's 1962 photograph or one taken in 1968. On April 18 Miss K was taken to the Public Safety Building in Rochester to attend a lineup in which petitioner appeared without counsel and without having been informed of the right to have counsel present. At that time she had already heard on the radio the name of the man suspected of being her assailant, and she thought the police were going to show her the man depicted in the photograph they were interested in the previous day. Before viewing the lineup she was again shown the photograph, although no one pointed out petitioner in the lineup or said that the man suspected of being her assailant was in the lineup. The lineup consisted of petitioner, two men Miss K knew to be policemen and a fourth man who, unlike petitioner, had a dark complexion and a receding hairline. After viewing the men and listening to them speak, Miss K stated that, although petitioner resembled the man who had attacked her, she wasn't sure he was the assailant. Later, upon returning home she told her father she was sure petitioner was her attacker, and he so informed the police.

When Mrs. Lagasse passed Miss K's assailant on her trip to the store, she saw his face "very clearly" from a distance of just a few feet. Her view of him from the store was through a large window into an area illuminated by light from the store. Later in the evening Mrs. Lagasse's view from her house of Miss K and her assailant was aided by a nearby street light. The next day she described the man she had seen to the police as a stocky white man about 35 years old who was dressed in "shiny" shoes or rubbers, a dark coat and a dark hat from which extended a piece of dark hair, and who had a round, pock-marked or whiskered face with good teeth and fat lips. On January 17, 1969 the police showed Mrs. Lagasse the fifteen photographs, including petitioner's 1962 pho-

tograph, that had been shown Miss K, but she made no identification. Nor on subsequent occasions did she make an identification, although once she thought she saw a photograph of the man she had seen the evening of the crime. On April 17, 1969 the police showed Mrs. Lagasse the photographs that were shown to Miss K that day. Looking at petitioner's photograph, she stated that his build was the same as that of the man she had seen on January 14 and that his face "slightly resembled" the man's. The next day Mrs. Lagasse was taken to a courtroom in the Public Safety Building to watch prisoners walking into court one at a time for appearances in court.[2] After seeing approximately half a dozen men pass by, she picked out petitioner as the man she had seen on the evening of the crime.

On April 17, 1969 petitioner was in a group of prisoners at the Public Safety Building scheduled for appearance in court. A policeman investigating Miss K's case noticed him because he resembled the descriptions given by Miss K and Mrs. Lagasse and checked his record. The next day the policeman scheduled the aforementioned viewings of petitioner by the women and also arranged for his questioning by police officers. The questioning commenced shortly after petitioner was taken to an interview room at approximately 1:30 p. m. Initially petitioner denied involvement in the crime against Miss K, but after being told that he had already been identified as the assailant, he gave an oral statement. At approximately 2:30 p. m. a stenographer was summoned, and petitioner gave a statement which was taken down by the stenographer between 2:34 and 2:55 p. m. and later transcribed. No promises or threats were made during the session, and petitioner was twice advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), first at 1:35 p. m. before ques-

tioning commenced and again when the stenographer began to take down his statement.

While the oral and transcribed statements made by the petitioner were substantially similar, they differed in one respect. At first petitioner orally admitted he had engaged in sodomy and intercourse with the girl he had attacked, but later he said he wasn't sure, and the transcribed statement reflects this uncertainty.

At the conclusion of the identification hearing the trial judge ruled that testimony relating to the pretrial identifications of petitioner by Miss K and Mrs. Lagasse would be inadmissible at trial but their in-court identifications would be admissible. In a written memorandum filed thereafter he gave the following reasons for his rulings. In light of the fact that, at the time the confrontations with Miss K and Mrs. Lagasse occurred on April 18, 1969, petitioner had not yet been arrested or indicted for the attack of Miss K, the problem of the admissibility of identification evidence was governed not by United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), but by Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The procedures followed at the confrontation involving Miss K were unfair and violated *Stovall,* and evidence relating to the identification she made at that time would therefore be inadmissible at trial. Although the prosecution had not demonstrated by clear and convincing evidence that an in-court identification would have a source independent of the prior confrontation, such an identification would nevertheless be permitted at trial because the hearing had given defense counsel the facts necessary to argue to the jury that the identification was based upon an earlier, unreliable one. Turning to Mrs. Lagasse, the procedures followed at her

2. Petitioner was appearing in court for sentencing on conviction of criminal trespass unrelated to the crime against Miss K.

confrontation with petitioner did not violate *Stovall*. Nevertheless, she would not be allowed to testify about the identification she made at that time, for to do so would put defense counsel in the position of having to choose between referring to petitioner's presence in court on another charge and surrendering an effective cross-examination. She would be allowed to make an in-court identification of petitioner, for such an identification would not be tainted by any prior illegality.

At the end of the hearing on the admissibility of petitioner's statements, the trial judge found that petitioner had been advised of, and had waived, the rights dictated by Miranda v. Arizona, *supra*, that he had not been physically or mentally abused or threatened or promised anything and that his statements were voluntarily and freely given and therefore admissible at trial.

On petitioner's appeal of his conviction, the Appellate Division held that it was error to allow Miss K to make an in-court -identification of petitioner because the prosecution had failed to show that the identification had a basis independent of unfair pretrial identification procedures. It held further, however, that this error was harmless beyond a reasonable doubt in light of petitioner's statement "giving details which only the perpetrator would know" and the identification testimony of "an independent witness." 36 A.D.2d at 1012, 321 N.Y. S.2d at 451.

■ The state trial judge correctly held that the principles set forth in Stovall v. Denno, *supra*, governed petitioner's case. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), clearly indicates that applicability of United States v. Wade, *supra*, and Gilbert v. California, *supra*, is triggered by the commencement of adversary judicial proceedings against an individual, not by his being taken into or held in custody. *See* United States v. Davis, 399 F.2d 948, 951 (2d Cir.), cert. denied, 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 449 (1968) ("We do not read *Wade* and

its siblings as saying that the mere fact of custody, especially when this is for an unrelated crime, automatically triggers the Sixth Amendment right to counsel, as it would the Fifth Amendment privilege against self-incrimination").

■ Under *Stovall*, the court, considering "the totality of the circumstances," must determine whether a confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." 388 U.S. at 302, 87 S.Ct. at 1972. Applying the first prong of this test, the state trial judge held that the identification elicited at Miss K's pretrial confrontation with petitioner was so unfair that testimony about it would be inadmissible at trial. At oral argument on the instant petition, counsel for respondent hinted that under Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the confrontation was not "unnecessarily suggestive." The instant case is, however, factually distinguishable from *Biggers* and is indeed closer to Foster v. California, 394 U.S. 440, 89 S. Ct. 1127, 22 L.Ed.2d 402 (1969), than to *Biggers*. The exhibition of petitioner's photograph to Miss K on both April 17 and 18, followed by the lineup containing two policemen known to her and a man different in physical appearance from petitioner "made it all but inevitable that [she] would identify petitioner whether or not he was in fact 'the man'", Foster v. California, supra, 394 U.S. at 443, 89 S.Ct. at 1129, despite the doubts she expressed until after the lineup had been completed and she had returned home. The state trial judge was therefore correct in excluding evidence of Miss K's pretrial identification of petitioner.

■ Notwithstanding an "unnecessarily suggestive" confrontation, however, an in-court identification may be allowed if, applying the second prong of *Stovall*, the confrontation is not "conducive to irreparable mistaken identification." *See* Neil v. Biggers, *supra*, 409 U.S. at 196–200, 93 S.Ct. at 380; Unit-

ed States ex rel. Bisordi v. LaVallee, 461 F.2d 1020, 1023–1024 (2d Cir. 1972). The factors to be considered in evaluating the reliability of an identification made after a suggestive confrontation are similar to those to be considered in determining whether an identification made at a confrontation violating United States v. Wade, *supra,* has a source independent of the confrontation. Neil v. Biggers, *supra,* 409 U.S. at 199, 93 S.Ct. at 382, lists the following:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*See* United States ex rel. Phipps v. Follette, 428 F.2d 912, 915 (2d Cir.), cert. denied, 400 U.S. 908, 91 S.Ct. 151, 27 L. Ed.2d 146 (1970). Turning to the instant case, the state trial judge held that clear and convincing evidence did not demonstrate that Miss K's in-court identification would have a source independent of the earlier confrontation, and the prosecution's brief on appeal states that "we could not seriously urge" the ruling was incorrect. Considering the aforementioned factors in the totality of the circumstances, particularly the length of time between the crime and the confrontation and Miss K's doubts at the confrontation, this court cannot disagree with the state court's holding. In light of the holding, it was error to allow Miss K at trial to identify petitioner as her assailant.

 Petitioner contends that this error cannot be characterized as harmless, as was done by the Appellate Division. He argues that there was no reliable evidence on which to base a finding of guilt because, first, his "confessions" were in effect involuntary because induced by a policeman's statement that he had been identified by a witness to the crime and, second, Mrs. Lagasse's identification of him at trial runs afoul of *Stovall.*

Petitioner's oral and written "confessions" were given after he had received the *Miranda* warnings and had not asked to see an attorney. While he did not make the statement until after he had been confronted with the apparently truthful [3] remark that he had been identified, there is no allegation that the police engaged in any physical or psychological coercion in obtaining the statement. In these circumstances it cannot be said that petitioner's statements were involuntary. *See* United States ex rel. Lathan v. Deegan, 450 F.2d 181 (2d Cir. 1971), cert. denied sub nom. Lathan v. Deegan, 405 U.S. 1071, 92 S.Ct. 1520, 31 L.Ed.2d 803 (1972) (soldier's confession was not rendered inadmissible because detective falsely represented himself as an army officer and induced the confession by demonstrating that he had evidence linking the soldier to the crime); United States ex rel. Caminito v. Murphy, 222 F.2d 698, 700–701 (2d Cir.), cert. denied, 350 U.S. 896, 76 S.Ct. 155, 100 L.Ed. 788 (1955) (even deceit in confronting a suspect with disguised police officers who lied in identifying him would not suffice to vitiate a confession as unconstitutionally obtained); Brown v. Cox, 311 F.Supp. 81, 89–90 (E.D.Va.1971) (confession obtained by confronting suspect with statement of another participant in the crime is not involuntary). A statement by the Supreme Court in Stein v. New York, 346 U.S. 156, 186, 73 S.Ct. 1077, 1093, 97 L.Ed. 1522 (1952), is apropos to the instant case:

> Of course, these confessions were not voluntary in the sense that petitioners wanted to make them or that they were completely spontaneous, like a confession to a priest, a lawyer, or a psychiatrist. But in this sense no criminal confession is voluntary. . . [The one defendant's] confession came at a time when he must have known

---

3. It appears that the interrogation did not occur until after petitioner had been identi-

fied by Mrs. Lagasse and perhaps also by Miss K.

that the police already knew enough, from [his colleagues], to make his implication inevitable. [The second defendant] held out until after [the first defendant] had confessed and implicated him. Both confessions were "voluntary," in the only sense in which confessions to the police by one under arrest and suspicion ever are.

■ Turning next to Mrs. Lagasse's identification, the court does not believe that it was prompted by an "unnecessarily suggestive" confrontation, as was Miss K's. Mrs. Lagasse's reaction to the photograph of petitioner shown her on April 17, 1969 was that it "slightly resembled" Miss K's assailant and, after seeing approximately half a dozen men in court the next day, she picked out petitioner quickly and surely as he passed by. Even if this confrontation was "unnecessarily suggestive" or cannot be said to have been not "unnecessarily suggestive" because of the unavailability of information about the other men who passed Mrs. Lagasse, it was not "conducive of irreparable mistaken identification" requiring exclusion of the in-court identification. Mrs. Lagassee had not one but two opportunities to view Miss K's assailant the night of the crime. She gave a complete and accurate description of the man to the police and she was certain of her identification of petitioner at the confrontation as well as at the hearing held at trial, where she was subjected to cross-examination as to it. The case of United States v. Luck, 447 F.2d 1333 (6th Cir. 1971), cited by petitioner is inapposite. In that case, first, there occurred in effect a showup at the defendant's arraignment and second, there was nothing in the record to indicate a foundation for the identification independent of the showup.

Having found that petitioner's statement and Mrs. Lagasse's identification of him were properly admitted at trial, the court must finally determine whether their presence before the jury rendered harmless the error of allowing Miss K to identify petitioner at trial. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), states the law relevant to that determination. Focusing on the impact of a constitutional error, *Chapman* requires the prosecution "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24, 87 S.Ct. at 828. *Harrington* adds that the test is "the probable impact of the [illegally admitted evidence] on the minds of an average jury" and that a conviction need not be reversed simply because the reviewing court "can imagine a single juror whose mind might have been made up because of" the evidence. 395 U.S. at 254, 89 S.Ct. at 1728.

Considering the evidence in the instant case, the court "believe[s] beyond a reasonable doubt that the jury would not have reached a different verdict solely on the basis of the properly admitted evidence," Stone v. United States, 435 F.2d 1402, 1406 (2d Cir. 1970), cert. denied, 402 U.S. 977, 91 S.Ct. 1681, 29 L.Ed.2d 143 (1971), and that the error of admitting Miss K's in-court identification of petitioner was harmless. *Compare* Willard v. United States, 421 F.2d 59 (9th Cir. 1969) (untainted in-court identification and defendant's own confession). Indeed the court concludes that petitioner's "confessions" alone provide a sufficient basis for finding harmless error in this case. Even if one disregards the oral "confession" testified to by the policemen, the written statement placed petitioner at the scene of the crime, as did the statement in Harrington v. California, *supra*. *See* United States v. Smith, 450 F.2d 312, 314 (3d Cir. 1971), cert. denied, 405 U.S. 932, 92 S.Ct. 989, 30 L.Ed.2d 807 (1972) (defendants gave to police statements which, while not admitting their active participation in crimes of interstate transportation of stolen motor vehicle and kidnapping, clearly tended to place them in car in question). Furthermore, both the oral and written statements corroborated many items testified to by

Miss K: that she was carrying a radio, that she was wearing a dress or skirt, not pants, and that petitioner left the scene of the crime by jumping a wire fence. The instant case is similar to Roper v. Beto, 454 F.2d 499, 503–504 (5th Cir.), cert. denied, 406 U.S. 948, 92 S.Ct. 2053, 32 L.Ed.2d 336 (1972), where the court found that any error in admitting identification testimony by the victim of a rape was harmless error in light of the attacker's confession.[4]

The petition for a writ of habeas corpus is denied.

Certificate of probable cause and permission to appeal in forma pauperis are granted. Petitioner may file a notice of appeal with the Clerk of the United States District Court, United States Court House, Buffalo, New York, without the payment of filing fees.

So ordered.

---

4. The instant case differs from *Roper* in that petitioner called to the stand a witness, John Levesque, who stated that he was "absolutely sure" that petitioner was not the man he had seen with Miss K about 9:00 p. m. the night of the crime. Levesque's testimony merely indicates the relative unreliability of identification testimony—he had told the grand jury that he "couldn't be sure" whether a photograph of petitioner was the man he had seen that night—and emphasizes that petitioner's statements would have a much greater impact on the jury than identification testimony.