406 So.2d 523 (1981)
Dr. Gartrell GAINES, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-2332.
District Court of Appeal of Florida, Fourth District.
November 4, 1981.
Rehearing Denied December 23, 1981.
*524 Rendell Brown of Brown & Weaver, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Russell S. Bohn, Asst. Atty. Gen., West Palm Beach, for appellee.
DANIEL S. PEARSON, Associate Judge.
Gartrell Gaines appeals his convictions for (a) aiding and abetting the possession of hydromorphine, a controlled substance commonly known as Dilaudid, with intent to distribute and (b) aiding and abetting the possession of the same substance by misrepresentation, fraud, forgery, deception or subterfuge, violations of Section 893.13(1)(a) and 893.13(3)(a)1, Florida Statutes (1977). The evidence was sufficient to establish that Gaines on or about June 21, 1978, aided and abetted others in unlawfully acquiring Dilaudid by verifying to one Gene Farley, a pharmacist, that a prescription for Dilaudid made out to one Willie Kendricks was genuine, when in truth and fact, as Gaines well knew,[1] the drug had never been prescribed by Gaines for Kendricks, and Gaines had not signed his name on the prescription form which bore his printed name, address and phone number.[2]
Only two points raised by Gaines require discussion. The first is his contention that he was entitled to a judgment of acquittal because the State's proof which showed that the Kendricks prescription was actually filled on June 22, 1978, varied from the date in the information and statement of particulars; and his alternative contention that he was entitled to have the jury instructed that the State was required to prove beyond a reasonable doubt that the *525 crime was committed on June 21, 1978, not, as it was instructed, on a date reasonably near the date alleged in the information.[3]
The information alleged that Gaines committed the substantive offenses charged "on or about June 21, 1978." Gaines moved for a statement of particulars requesting, inter alia, the State to set forth the time and date of the alleged offenses. The State's written response was that the offenses occurred between "see the dates set forth in the Information." Thus, by reference, the statement of particulars was that the offenses were committed on or about June 21, 1978.
Gaines did not pursue the matter further, for example, by requesting better particulars or asking the court's aid in compelling a more exact answer. Later, the co-defendant, Fowler, requested the same particulars. During a hearing on Fowler's motion, the prosecutor, mistakenly referring to the date appearing on the prescription form, stated that the offenses occurred on June 21, 1978. Gaines moved for acquittal asserting that the prosecutor's response to Fowler should be considered a response to Gaines, and that therefore, there existed a variance between the date stated and the date proved. That motion denied, Gaines requested that the jury be instructed that the State be required to prove that the offenses occurred on June 21, 1978. During the argument before the trial court, Gaines acquiesced in the statement of Fowler's counsel, "We knew from the beginning of this case they had absolutely no evidence on June 21st, 1978. They had no evidence of these overt acts being committed on June 21st, 1978." Finally, there is nothing about the difference between June 21 and June 22 which in the circumstances of this case serves to prejudice Gaines' case in the slightest way.
The necessary premise to Gaines' argument in support of the variance or the requested instruction is that he was advised by a statement of particulars that the offense was committed on June 21, 1978. Since the premise is false, Gaines' argument fails at the threshold. The only particulars furnished to Gaines referred him back to the information, which in turn advised him that the offense was committed "on or about June 21, 1978." He did nothing further about this non-answer. He did nothing to make himself the beneficiary of the prosecutor's offhanded response to Fowler's motion for particulars. Fowler's coattail, itself threadbare, certainly will not support Gaines. But even if, arguendo, we regard the statement to Fowler that the offense was committed on June 21, 1978, as a further statement of particulars to Gaines, Gaines, although past the threshold, finds no comfort from the law within. It is now abundantly clear that even where the date of the offense contained in the information is later particularized, where a lack of prejudice to the defendant affirmatively appears in the record, as it so clearly does here, a statement of particulars is not binding on the State. Hoffman v. State, 397 So.2d 288 (Fla. 1981), approving this court's decision in Hoffman v. State, 372 So.2d 533 (Fla. 4th DCA 1979).[4] Since Gaines was not *526 misled or embarrassed or prejudiced in his defense in any way by relying on the inconsequential date of June 21, 1978, the trial court was correct in denying his motion for judgment of acquittal and denying his requested instruction. Compare R.C.B. v. State, 374 So.2d 1168 (Fla. 2d DCA 1979) (date of offense significant where burglaries of same premises occurred within three-week period); Jackson v. State, 350 So.2d 808 (Fla. 2d DCA 1977) (date of offense significant where alibi defense directed to specific date charged in information); Mitchell v. State, 333 So.2d 89 (Fla. 1st DCA 1976) (date of offense significant where alibi defense directed to specific date charged in information); Smith v. State, 253 So.2d 465 (Fla. 1st DCA 1971) (date of offense significant where act of bribery occurred after proceeding before and vote by public official under statute requiring act to precede proceeding or vote).
Gaines' other point on appeal is that the trial court erred in denying his motion to suppress certain testimony of a witness, Gene Farley. This testimony, according to Gaines, was procured through suggestive police procedures and irreparably led to a misidentification of Gaines.
Gene Farley was a pharmacist employed by Wallace Pharmacy in Belle Glade, Florida, from 1974 to 1979. He testified that on June 22, 1978, he filled a prescription for four milligrams of Dilaudid, a Schedule II narcotic, for a Willie Kendricks. Since he was not familiar with Kendricks, Farley called the office of the prescribing physician, Dr. Gaines, to obtain a verification before filling the prescription. A woman answered, and Farley asked to speak to Dr. Gaines. Farley's testimony continued:
"A When Doctor Gaines came on the phone, I identified myself as to who I was and where I was and told him that I had a prescription presented to me to be filled for Dilaudid, four milligrams, for Willie Kendricks and I asked him if it was one of his prescriptions and it was an authorized prescription by him.
"Q All right, now, did you then proceed to fill that prescription?
"A Yes, sir, after he confirmed it.
"Q Okay. Have you had an occasion to call the office of Doctor Gaines and speak to Doctor Gaines in the past?
"A Yes, sir.
"Q And approximately how many times, over what period of time?
"A Oh, I would say six times within two years, three years.
"Q And during that period of time, in conversations that you would have with him, how long would those conversations occur and what would be the nature of the conversations?
"A It would be anywhere from a minute to three or four minutes, depending on the circumstances and the nature of the prescription and I have always identified myself and made a few comments as to the weather or what have you, a few pleasantries and state the reason I called him, as far as the nature of the prescription or why I called to get the prescription authorized to fill or refill.
"Q Did you become familiar with his voice during that period of time?
"A Yes, sir.
"Q And was there anything about that voice that was or was not familiar to you?
"A It was  he had a very distinctive accent to me, over the phone. It was characteristic of my high school chemistry teacher in high school."
... .
"Q And was there any doubt in your mind on that occasion that the man you spoke to on that occasion was the same man you spoke to on other occasions at Doctor Gaines' office?
"A No, sir.

*527 "Q And the other calls that you would make to Doctor Gaines, do you recall the nature of the prescriptions or the drugs that you would call on, would they vary, would they all be the same?"
... .
"THE WITNESS: There were a varied type of drugs. I remember on two different occasions I did, I remember specifically I talked to him about the medication Dilaudid, four milligrams."
On November 21, 1978, at the request of the Sheriff's Office, Farley called the office of Dr. Gaines on the pretense of asking for a refill authorization for two prescriptions. Farley was told to ask for Dr. Gaines. He was not told that in fact it would be Dr. Gaines who would come on the line. Farley carried out these instructions. He testified that he recognized the voice which answered the phone as being the same voice which he had heard on each prior occasion when he called Gaines' office and spoke to the person who identified himself as Dr. Gaines. Farley specifically stated that the voice of November 21, 1978, was the voice which had verified the Kendricks prescription on June 22, 1978. Thus, the essence of Farley's testimony was that whomever he spoke to on November 21, 1978, was one and the same as the person who verified Kendricks' prescription. Farley's testimony merely established this sameness. It was testimony of an undercover detective who, unknown to Farley, was in Dr. Gaines' office when Farley called on November 21, 1978, which established that the person with whom Farley spoke on that date was, in fact, Dr. Gaines.[5]
There is no disagreement as to the applicable law. An identification is constitutionally defective only if the confrontation is unnecessarily suggestive and gives rise to a substantial likelihood of mistaken identification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Grant v. State, 390 So.2d 341 (Fla. 1980). This two-pronged test, first fashioned in regard to visual identification, is equally applicable to voice identification cases. United States v. Flickinger, 573 F.2d 1349 (9th Cir.), cert. denied, 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978). See Roper v. Beto, 454 F.2d 499 (5th Cir.1972).
The State argues with some force that the Farley phone call on November 21, 1978, was not a suggestive confrontation *528 procedure. We agree that the procedure itself was hardly more suggestive than Farley's prior phone calls to the office of Gaines which, of course, were not made at the instance of the police. The suggestiveness of these phone calls lay in the inherent tendency to believe that when someone answered as Gaines, it was Gaines who was speaking. It can also fairly be said that no suggestion, explicit or implicit, was given to Farley that the voice which came on the line on November 21 would match the one he had heard on June 22, 1978, or if it did, that the voice would be that of Dr. Gaines, the defendant, rather than a person answering to that name. However, it is also true that a confrontation procedure which includes only a single voice is more suggestive than a procedure which includes a number of voices from which a selection is made and is unnecessarily so when the less suggestive procedure could have been used. Compare Roper v. Beto, supra; United States ex rel. Marino v. Rundle, 328 F. Supp. 1154 (E.D.Pa. 1971) (identification of defendant's voice from several voices), with Palmer v. Peyton, 359 F.2d 199 (4th Cir.1966); United States v. Flickinger, supra; Thomas v. Leeke, 393 F. Supp. 282 (D.S.C. 1975) (defendant's voice only one heard by witness). See also United States ex rel. Kirby v. Sturges, 510 F.2d 397 (7th Cir.), cert. denied, 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975) (nearly every one-on-one confrontation conveys a message that the police believed the suspect to be guilty). Even so, since the identification procedure employed, considering all the circumstances, did not give rise to any substantial likelihood of misidentification, Farley's testimony concerning the November 21, 1978, voice identification was properly admitted.
Viewing the present voice identification against the factors generally used to evaluate the substantial likelihood of misidentification, see e.g., Neil v. Biggers, supra, we have no difficulty concluding that Farley's identification of the voice on November 2 possessed the necessary reliability to make it admissible for the jury's consideration. Farley had ample prior opportunity to hear the voice; he heard it before on a number of occasions in like telephone conversations, the context of which demanded that Farley pay attention to the voice; after the phone call of November 21, 1978, Farley unhesitatingly and immediately stated that the voice he had just heard was the same voice that he had heard on June 22; and the lapse of time between June when Farley last heard the voice and November when he again identified it was not such as to make the identification unreliable, particularly considering that Farley initially pointed out a distinctive characteristic of the voice he had previously heard. While Farley's level of certainty in his identification does not match in drama that of the rape victim who became ill when she heard the voice of her attacker, see Roper v. Beto, supra, and while the lapse of time between identifications is concededly in excess of the several days found in Roper v. Beto, supra, and United States ex rel. Marino v. Rundle, supra, the reliability of Farley's identification does not necessarily pale by comparison. Farley, unlike the witnesses in those cases, was not a victim of the crime, more susceptible to suggestion. Moreover, neither Farley's awareness that his purpose was to identify a voice, nor the fact that his identification was as to the single characteristic of voice, renders his identification unreliable. Roper v. Beto, supra; Jones v. Director, Patuxent Institution, 351 F. Supp. 913 (D. Md. 1972); United States ex rel. Marino v. Rundle, supra. The factors which led the courts in Palmer v. Peyton, supra, and Thomas v. Leeke, supra,[6] to exclude *529 the identification testimony: that the authorities, at least implicitly, pointed an accusatory finger at the suspect in the presence of an uncertain, anxious and interested victimwitness, and led the witness to believe that to fail to identify the individual would be inconsistent with other facts pointing to guilt, are simply not present here. Where such factors do not exist, see e.g., Sanchell v. Parratt, 530 F.2d 286 (8th Cir.1976); United States ex rel. Kirby v. Sturges, supra; Roper v. Beto, supra; Jones v. Director, Patuxent Institution, supra; United States ex rel. Marino v. Rundle, supra, neither does there necessarily exist a substantial likelihood of misidentification. We find that the procedure used in the present case did not give rise to a substantial likelihood of misidentification. Accordingly, Gaines' convictions are
AFFIRMED.
DOWNEY and GLICKSTEIN, JJ., concur.
NOTES
[1] Kendricks was not a patient of Dr. Gaines and did not personally meet Gaines during the time in question. Kendricks was paid by the co-defendant, David Fowler, to pass the prescriptions and obtain the Dilaudid. Kendricks testified without objection that he saw Fowler meet with Gaines, that Fowler assured him Gaines would verify the prescriptions which Fowler gave Kendricks, and that Fowler told him he was paying off Gaines. After the police learned of Kendricks' involvement, they enlisted Kendricks' aid in going to Gaines to discuss the situation. The following exchange took place:

"KENDRICKS: Wait a minute, let me tell you something. If I go to jail, y'all gon' still be out here ...
"[GAINES]: Naw, I'll be in jail too, right along with you. If you go I swear I'll be gone, right along with you. That's why I'm trying to straighten you out."
[2] This particular prescription was the only one charged in the two substantive counts of the information. Gaines was acquitted of the charge of conspiring with David Fowler and Willie Kendricks to commit the substantive offense of distribution of Dilaudid. Fowler was convicted of the conspiracy and his conviction was affirmed by us. See Fowler v. State, 404 So.2d 151 (Fla. 4th DCA 1981).
[3] The instruction requested was: "... in this case by a separate pleading the exact date has been made an issue to be tried. The burden, therefore, rests upon the State to prove beyond a reasonable doubt that the crime was committed on [June 21, 1978]." The instruction given was: "In this case it is sufficient if the evidence establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged." See Fla.Std.Jury Instr. (Crim.) 2.09 (1976).
[4] This court's holdings to the same effect in Dent v. State, 391 So.2d 742 (Fla. 4th DCA 1980); Howlett v. State, 260 So.2d 878 (Fla. 4th DCA 1972); and Perlman v. State, 269 So.2d 385 (Fla. 4th DCA 1972), were implicitly affirmed by the Supreme Court's holding in Hoffman v. State, supra. Hoffman qualified the Supreme Court's holding in State v. Beamon, 298 So.2d 376 (Fla. 1974). It now appears that cases following the dicta in Beamon that particulars are cast in stone without regard to prejudice, see e.g., Jefferson v. State, 391 So.2d 747 (Fla. 5th DCA 1980), are overruled, sub silentio, by Hoffman. Since the present case does not involve the slightest reliance by Gaines on the June 21 date or any embarrassment to his defense in the jury's presence, a circumstance which provoked Judge Anstead's dissent in Stang v. State, 403 So.2d 542 (Fla. 4th DCA 1981), we need not, as this court did in Stang, certify to the Supreme Court the question of whether Beamon or Hoffman controls this case. Moreover, we add that we consider that the Hoffman holding is not confined to situations where the State formally moves to amend and deem the trial court's instruction in the present case, see n. 3, supra, the functional equivalent of amending any statement of particulars.
[5] Before trial, Gaines moved to suppress Farley's testimony concerning the November 21, 1978, telephone call. The court denied his motion. At the outset of Farley's testimony about the November 21, 1978, call, Gaines unsuccessfully renewed his pretrial motion and objected to Farley's testimony. While Gaines' counsel did not object to the individual questions put to Farley, his objection at the outset of Farley's testimony was sufficient to preserve for appellate review the issue of the propriety of the admission of the challenged evidence and satisfy the contemporaneous objection rule. Compare Fraterrigo v. State, 151 Fla. 634, 10 So.2d 361 (Fla. 1942); Robertson v. State, 94 Fla. 770, 114 So. 534 (1927); Alvarez v. State, 400 So.2d 768 (Fla. 4th DCA 1981); Witt v. State, 388 So.2d 1 (Fla. 4th DCA 1980); DeLuca v. State, 384 So.2d 212 (Fla. 4th DCA 1980); Kiddy v. State, 378 So.2d 1332 (Fla. 4th DCA 1980); Jones v. State, 360 So.2d 1293 (Fla. 3d DCA 1978); Stanley v. State, 357 So.2d 1031 (Fla. 3d DCA), cert. denied, 364 So.2d 891 (Fla. 1978); Tennant v. State, 205 So.2d 324 (Fla. 1st DCA 1968) (where pre-trial motions to suppress were not renewed at trial contemporaneously with the introduction of the challenged evidence, error, if any, in suppression ruling was waived).

The State argues, however, that Gaines' failure to object to the testimony of John Carroll, an agent of the Palm Beach County Sheriff's Office, constitutes a waiver of Gaines' motion to suppress Farley's testimony. This argument misses the mark. Carroll's testimony was that he had called Gaines' office in September 1978 and spoken to a person who identified himself as Gaines; that he later spoke to him in person and on the phone on several occasions; that he listened to a tape of the Farley-Gaines call of November 21, 1978, and the voice of Gaines on the tape matched the voice he had heard on the prior occasions. But Gaines' objection to Farley's testimony was that Farley identified Gaines' voice as the one which approved the prescription on June 21, 1978, a matter that Carroll's testimony did not, and could not, touch upon.
[6] In Palmer v. Peyton, supra, the rape victim was told that the police had a suspect. Despite the fact that the victim had visually identified her attacker as being a certain height, wearing an orange shirt, and having a snug-fitting clothes bag over his head, the police made no effort at any identification other than voice. Before they asked the victim to identify the suspect's voice, she was first shown the orange shirt, and the suspect, without a bag over his head, was then asked to repeat the exact phrase the victim said the perpetrator had used during the rape. In Thomas v. Leeke, supra, the robbery defendant was said to have spoken through a stocking over his head. When the police asked the victim to identify him, they told the victim they were taking him back to the defendant's cell so that he could identify "the voice of the man who robbed them" and then had the defendant speak without a stocking over his head.